**UNITED STATES, Appellee,**

v.

**Jose M. SUAREZ, Captain**
**U.S. Army, Appellant.**

No. 66,742.
CM 8903603.

U.S. Court of Military Appeals.

Argued Feb. 12, 1992.
Decided Sept. 28, 1992.

For Appellant: *Kenneth G. Gale* (argued); *Captain Michael Huber* (on brief).

For Appellee: *Captain Donna L. Barlett* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Major Joseph C. Swetnam* (on brief); *Captain Marcus A. Brinks.*

*Opinion of the Court*

COX, Judge:

In a general court-martial for child sex-abuse crimes, expert testimony was heard regarding "Child Sexual Abuse Accommodation Syndrome," specifically on how the victims in the case exhibited characteristics of the syndrome. Appellant argues that the testimony in question supported the credibility of inculpatory testimony and impeached exculpatory testimony, thereby improperly using "syndrome" evidence. We decide that the testimony was properly introduced to the court-martial, presented to the members, and instructed upon by the military judge.

Appellant has also petitioned for a new trial. For reasons stated hereinafter, we will deny the petition. Art. 73, Uniform Code of Military Justice, 10 USC § 873.

## I

Appellant was tried by a general court-martial before members at Leighton Barracks, Wuerzburg, Germany. Contrary to his pleas, he was convicted of committing indecent acts, indecent assault, and communication of a threat. Art. 134, UCM.J., 10 USC § 934.[1] Specifically, appellant was found to have fondled the buttocks, vaginal areas and breasts of his two adopted daughters (A and S, 11 and 12 years old, respectively) on diverse occasions during a 16-month period. He was also found to have threatened one of the daughters with death if she told anyone about the sexual abuse.

The case against appellant rested upon the testimony of his two adopted daughters, a counselor—Ms. Mordkin—and a clinical psychologist—Dr. Burns. The daughters' testimony, presented by the Government during its case-in-chief,

presented contrasting views of appellant's actions. S's testimony was hostile to appellant in no uncertain terms. While crying and cowering on the witness stand, she described the abuse, her departure from the family home, and her admittance into mental institutions and treatment back in California. S specifically testified that appellant touched her "rear end" and "vaginal area"; and that he touched and licked her breasts. By contrast, A was a reluctant witness. Although she acknowledged the excessive "touching" carried on by appellant, she denied its wrongfulness and minimized it as "playful" and "joking around." A's testimony at trial contradicted her Article 32, UCMJ, 10 USC § 832, testimony, where she did describe appellant's conduct as wrongful.

After the daughters testified, the Government turned to expert witnesses. First to be called was Marsha S. Mordkin, licensed by the State of California as a "Marriage Family/Child Therapist." She was qualified by the military judge as an expert without defense objection "in the area of child counseling" and "sexual abuse issues." She had treated S after her departure from Germany.[2] Ms. Mordkin testified about "Post Traumatic Stress Syndrome," giving general characteristics about the syndrome. Trial counsel asked Ms. Mordkin whether some of the same characteristics common to post traumatic stress syndrome also appeared in sexually abused children; her response was affirmative. Next, she was asked whether some of these characteristics appeared in S; again she responded affirmatively. The propriety of Ms. Mordkin's testimony is not before the Court.

After Ms. Mordkin's testimony, Dr. Burns, a member of the "Exceptional Family Member Program" at the 67th Evacua-

---

1. He was sentenced to be confined for 5 years and dismissed from the service. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence. 32 MJ 767 (1991).

2. Initially, after leaving Germany, S, her mother, and her brother, all sought some type of

counseling/treatment at treatment centers in the United States. S was first admitted to the Del Amo Hospital in Torrance, California. She was subsequently transferred to the Newport Harbor Adolescence Hospital, an inpatient residential psychiatric treatment facility. Ms. Mordkin began her treatment of S at the Newport Hospital.

tion Hospital in Germany was called to testify. Dr. Burns was qualified by the military judge, also without defense objection, as an expert witness on "child sexual abuse," having been established as a clinical psychologist specializing in child sexual-abuse matters. He testified that he knew the Suarez family and had treated S for over one year until he recommended her departure from Germany for treatment in the United States. Dr. Burns' knowledge of A was not from any treatment or interaction other than his observations of her testifying at the court-martial.

During Dr. Burns' testimony, trial counsel asked him about "Child Abuse Accommodation Syndrome" and whether the doctor could offer a general description of the syndrome. Dr. Burns described the syndrome and mentioned how abused children may act: how they may change their stories, recant allegations, fail to report abuse, accommodate themselves to the abuse, or delay reporting the abuse for a period of time. *See* Appendix A (for his complete testimony on syndrome). He was then asked if he noted any characteristics in A and S consistent with that syndrome. His answer was "yes." Dr. Burns noted that A did exhibit some aspects, while S had done so in the past but did not presently. Specifically, he noted the girls' failure to promptly report the abuse and A's recantation of the wrongfulness of appellant's actions from the Article 32 to trial.

## II

■ Under Mil.R.Evid. 702, Manual for Courts–Martial, United States, 1984, a person with "specialized knowledge" may testify as an expert to aid the factfinder in understanding the evidence. *United States v. Meeks*, 35 MJ 64 (CMA 1992); *United States v. Partyka*, 30 MJ 242 (CMA 1990); *United States v. Benedict*, 27 MJ 253 (CMA 1988); *United States v. Snipes*, 18 MJ 172 (CMA 1984). Expert testimony may not, however, be used to determine the credibility of a victim, and an expert may not opine as to the guilt or innocence of an accused. *United States v. Harrison*, 31

MJ 330 (CMA 1990); *United States v. Arruza*, 26 MJ 234 (CMA 1988), *cert. denied*, 489 U.S.1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989); *United States v. Petersen*, 24 MJ 283 (CMA 1987); *United States v. Azure*, 801 F.2d 336 (8th Cir.1986).

■ If a proper foundation is laid, use of certain types of syndrome evidence has been permitted to see if a victim's story mirrors patterns of consistency found in other victims. *See United States v. Palmer*, 33 MJ 7, 12 (CMA 1991) (psychologist's testimony on "intra-family dynamics in typical incest cases" allowed); *United States v. Carter*, 26 MJ 428 (CMA 1988) (recognized evidence of Rape Trauma Syndrome); *United States v. Rivera*, 26 MJ 638, 640–43 (ACMR) (evidence of Therapist–Patient Sex Syndrome not admissible but error harmless), *pet. denied*, 27 MJ 459 (1988); *see generally United States v. Tolppa*, 25 MJ 352 (CMA 1987).

Admissibility of "Child Sexual–Abuse Accommodation Syndrome" evidence is controversial to say the least. *See* Myers, Bays, Becker, Berliner, Corwin, and Saywitz, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L.Rev. 1 (1989). Yet some forms of this testimony are apparently admissible, in that it

helps explain why many sexually abused children delay reporting their abuse, and why many children recant allegations of abuse and deny that anything occurred.

*Id.* at 68. This testimony seems to be of this ilk. Further, the military judge instructed members no less than three times regarding how expert testimony should be received. See Appendix B (text of instructions given by the military judge). The judge warned members that such testimony was a mere aid to the factfinder, not a color on the credibility of a witness.

Even if these instructions might have been improved, defense counsel saw no reason to object to the testimony of any of the expert witnesses or to the instructions offered by the military judge. Mil.R.Evid. 103. In any event, we fail to find plain error, much less to hold that such testimo-

ny was erroneously presented before the members.

### Petition for New Trial

■ Under RCM 1210(f)(2)(A)-(C), Manual, *supra,* a new trial shall not be granted unless the evidence (1) "was discovered after the trial"; (2) would not "have been discovered ... at the time of trial in the exercise of due diligence"; and (3) would "probably" have "produced a substantially more favorable result." Appellant maintains the "new" evidence "seriously impairs the reliability and credibility" of S's testimony. Pet. for New Trial at 2.

Appellant's petition relies upon a new psychiatric report on S; court documents related to the adoption of S and A; and social service reports on the present mental health of S. The new psychiatric report is produced by Dr. Brodsky, a defense-procured expert who has not apparently examined S. Dr. Brodsky theorizes that S is carrying over trauma from sexual abuse experienced as a very young child (before being adopted by appellant) and projecting this forward to appellant. His opinion is based on newly discovered mental reports. He concludes that a conviction against appellant, given the new report, would be "difficult" to obtain in view of S's psychiatric disorder.

The court documents offer insight as to S's and A's adoption. They reveal the natural parents were unable to care for the children and relinquished their rights. However, the documents do not contain any information relating to appellant's contention that the children were abused. Appellant concedes that the documents were in existence at the time of trial.

Finally, it appears from social service documents included in the petition that, since the trial, S's mental health has deteriorated.

We conclude that this evidence would not have produced a substantially more favorable result. The general theme behind the material is S's mental illness and how it affects her credibility. However, at trial, it was well known that S was mentally ill. Dr. Burns testified he had treated her for some time, and Ms. Mordkin described her deterioration. Accordingly, appellant's petition for a new trial is denied.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

### APPENDIX A

TC: ... Doctor Burns, are you familiar with Child Abuse Accommodation Syndrome?

A: Yes.

Q (TC): Would you please describe it generally for the members?

A: Child Sex Abuse Accommodation Syndrome was formulated by Roland Summit, a psychiatrist out of the UCLA clinic. It helps explain why some children, after initially indicating that sexual abuse has occurred, later on change their stories; why some children go through a sex abusing scenario at home rather than reporting it to someone. It involves several features, but essentially you have—first of all, if I might refer to some notes—you have to have a situation where there is guaranteed secrecy. Secondly, the child has to feel relatively helpless. In other words, a child in a home with parents who are seen or perceived as the providers. *Given those situations and that sex abuse has occurred, you will sometimes have what is called an "accommodation" to the situation, in which, essentially, a child goes along with the sex abuse that has occurred.* Later on, you will have, when it finally is made manifest, which is often during the early years of adolescence when the child is getting a little more independent, delayed, conflicted or unconvincing kinds of disclosures to various people, often someone at school. And, finally, a retraction, because the child perceives that

the adults in the environment do not really believe her and are asking all kinds of questions about why she did not take action and are accusing her of lying and so forth. She will often retract because she does not want to be in the position of sending her father to prison or breaking up the family.

(Emphasis added.)

## APPENDIX B

The military judge gave the following instruction on findings regarding the testimony of Ms. Mordkin and Dr. Burns:

Now, you've heard, yesterday, the testimony of Ms. Mordkin and Dr. Burns in the area of child sex abuse and—child physiology. They're known as expert witnesses because their knowledge, skill, training, and education may assist you in understanding the evidence or in determining a fact in issue. You're not required to accept the testimony of an expert or give it any more weight than the testimony of an ordinary witness; however, you should consider their qualifications as expert witnesses.

Previously in the trial, and immediately after the testimony of Ms. Mordkin and Dr. Burns, the judge also warned the members about how they should regard such evidence. After Ms. Mordkin's testimony, the judge stated:

Gentlemen, I'd like to mention a couple of things to you. First of all, there—we have no expert witnesses who can come in and tell us what occurred and what didn't occur. The experts on credibility and in determining facts are, in this case, are you eight gentlemen and only you eight gentlemen. So, we can't, even though we'd like it, we can't have anybody come in and tell us what occurred. That's for you to decide based on all the evidence.

Now, to the extent that you believe that Miss Mordkin testified that she believes the accused [sic] was sexually abused, that's brought to you only for the—only to establish why Miss Mordkin has treated her in the way she has. You may not consider, if in fact she said it, if she said or if she indicated to you that she believes that [S] was sexually abused, you cannot consider that as evidence that [S] was sexually abused. Her opinion as to that is only limited to why she has acted the way she has.

You have—now, you can consider, among other things, her testimony that it is consistent with various diagnoses, but nevertheless, you have to determine for yourself, without the benefit of anybody's opinion what occurred.

Similarly, after Dr. Burns' testimony, the military judge instructed the members as follows:

Gentlemen, once again, I want to caution you about the Doctor's testimony. Once again, you cannot glean from it that he believes that [S] or [A] are telling the truth about what they testified, and if he does then you may only accept that for the limited purpose of showing why the Doctor acted the way he did.

WISS, Judge (concurring in part and in the result):

In light of no defense objection either to the evidence here challenged or to the military judge's instructions concerning it, I join the majority in finding that appellant waived his complaint in this Court. Mil. R.Evid. 103(a)(1) and RCM 920(f) Manual for Courts-Martial, United States, 1984. Accordingly, I do not reach the merits of appellant's claim that the evidence was inadmissible. I agree, as well, with the majority's treatment and disposition of appellant's petition for new trial.