**UNITED STATES of America, Appellee,**

**v.**

**James T. WHITTED, Appellant.**

No. 92–1181SD.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1993.

Decided Dec. 10, 1993.

· Michael C. Abourezk, Gregory, SD, argued for appellant.

Michelle G. Tapken, Sioux Falls, SD, argued (Kevin V. Schieffer and Michelle G. Tapken on the brief), for appellee.

Before FAGG, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

FAGG, Circuit Judge.

James T. Whitted, an American Indian, appeals his jury convictions for three counts of aggravated sexual abuse of a child, 18 U.S.C. §§ 1153(a), 2241(c) (Supp. IV 1986), one count of sexual abuse of a minor or ward, *id.* §§ 1153(a), 2243, and two counts of incest, *id.* § 1153(b), S.D.Codified Laws Ann. § 22–22–1(6) (Supp.1992). By admitting a doctor's diagnosis that the alleged victim, Whitted's daughter, L., had been repeatedly sexually abused, the district court committed a plain, prejudicial error that seriously affected the trial's fairness. We thus reverse Whitted's convictions.

In November 1988, after the last act of alleged abuse occurred, L.'s mother took L. to Dr. Heisler and asked the doctor to examine L. for a "possible incestuous situation." Based on medical findings from a pelvic examination, including a small vaginal opening and no tears in the edge of the opening, Dr. Heisler believed L. had not been sexually penetrated. Two years later, after L. had become sexually active with peers, a tribal investigator referred L. to Dr. Likness for a sexual abuse examination. Dr. Likness examined L. in December 1990, nearly three years after the last alleged act of abuse. In contrast to Dr. Heisler's earlier findings, Dr. Likness saw an expanded vaginal opening and only remnants of the hymenal ring during his pelvic examination of L. Dr. Likness's findings confirmed L. had been sexually active.

At the November 1991 trial, L., sixteen at the time, testified that her father sexually abused her between 1986 and January 1988 (when her parents separated) and that the abuse occurred as often as every other day. Dr. Likness also testified for the Government. During the Government's case-in-chief, Dr. Likness testified that L. told him most of the abuse was vaginal intercourse and oral sex acts. L. told Dr. Likness her father had anal intercourse with her "a couple of times." L. admitted she had engaged in consensual vaginal intercourse with peers, but denied any consensual anal activity with them. After taking L.'s history, Dr. Likness performed a physical examination. Dr. Lik-

ness said L.'s pelvic examination revealed a very open vagina, only remnants of the hymenal ring, and some scar tissue. Dr. Likness testified these findings were consistent with repeated penetration, including consensual and forced penetration, but Dr. Likness could not distinguish the penetrations or objectively identify who penetrated L. Dr. Likness testified he also examined L.'s rectum, and found it was dilated and fairly open. Dr. Likness testified this was also consistent with sexual abuse, but he could not objectively rule out consensual anal activity. After asking about the effects of the abuse on L., the prosecutor asked Dr. Likness for his final diagnosis. Dr. Likness replied, "My final diagnosis was that [L.] had suffered repeated child sexual abuse." Dr. Likness testified he recommended that L. not be exposed to her father in the near future.

Whitted testified in his defense and denied that he abused L. in any way. Doctors Heisler and Heinemann also testified for the defense. Dr. Heisler testified she believed L. had not been sexually penetrated before her November 1988 examination. Dr. Heinemann, a pediatrician who did not examine L., testified that there was no way to distinguish whether Dr. Likness's physical findings were the result of consensual sexual activity or abusive sexual activity.

■ On appeal, Whitted contends the district court committed plain error in admitting Dr. Likness's diagnosis of repeated child sexual abuse. We first quickly dispose of the Government's response. The Government contends Dr. Likness's diagnosis was admissible under Federal Rule of Evidence 803(4). Rule 803(4), however, is a hearsay exception that allows the admission of statements made by someone to the testifying medical witness for the purpose of medical diagnosis or treatment. The doctor's own opinion that L. had been sexually abused was not hearsay, Fed. R.Evid. 801(c) (defining hearsay as statement other than one made by declarant while testifying at trial), and thus, Rule 803(4) is clearly inapplicable to the admission of Dr. Likness's diagnosis.

■ Instead, Federal Rule of Evidence 702 governs the admission of expert testimo-ny. Under Rule 702, a qualified expert may give opinion testimony if the expert's specialized knowledge would help the jury understand the evidence or decide a fact in issue. *United States v. Arenal,* 768 F.2d 263, 269 (8th Cir.1985). Although an expert opinion is not inadmissible merely "because it embraces an ultimate issue to be decided by the trier of fact," Fed.R.Evid. 704(a), not all expert opinions are admissible. *Arenal,* 768 F.2d at 269. Opinions that are "phrased in terms of inadequately explored legal criteria" or that "merely tell the jury what result to reach" are not deemed helpful to the jury, Fed. R.Evid. 704 advisory committee's note, and thus, are not admissible under Rule 702.

■ In the context of child sexual abuse cases, a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits. *United States v. St. Pierre,* 812 F.2d 417, 419–20 (8th Cir.1987). A doctor who examines the victim may repeat the victim's statements identifying the abuser as a family member if the victim was properly motivated to ensure the statements' trustworthiness. *United States v. Renville,* 779 F.2d 430, 436, 438–39 (8th Cir.1985); Fed. R.Evid. 803(4). A doctor can also summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse. *See United States v. Azure,* 801 F.2d 336, 340 (8th Cir.1986) (dicta); *see also United States v. Provost,* 875 F.2d 172, 176 (8th Cir.), *cert. denied,* 493 U.S. 859, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989). Because jurors are equally capable of considering the evidence and passing on the ultimate issue of sexual abuse, however, a doctor's opinion that sexual abuse has in fact occurred is ordinarily neither useful to the jury nor admissible. *E.g., Johnson v. State,* 292 Ark. 632, 732 S.W.2d 817, 821 (1987); *Commonwealth v. Mendrala,* 20 Mass.App. 398, 480 N.E.2d 1039, 1042 (1985); *State v. Saldana,* 324 N.W.2d 227, 231 (Minn.1982); *Stephens v. State,* 774 P.2d 60, 66–67 (Wyo.1989); *see Goodson v. State,* 566 So.2d 1142, 1146 (Miss. 1990) (citing other states' decisions banning expert opinion testimony that a child has been sexually abused). A doctor also cannot

pass judgment on the alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's function to decide credibility. *Azure*, 801 F.2d at 339–41. Thus, we have held a pediatrician's testimony that an alleged child abuse victim was believable and telling the truth was not admissible under Rule 702 because the doctor put "his stamp of believability on [the victim's] entire story." *Id.* The doctor's testimony invaded the jury's exclusive province to decide witness credibility. *Id.*

▮▮▮ Applying these rules in this case, it was permissible for Dr. Likness to summarize the medical evidence and express his opinion that his medical findings were consistent with L.'s claims of sexual abuse. Dr. Likness's diagnosis of "repeated child sexual abuse," however, went too far. Partially because of the prosecutor's failure to focus the question asking for Dr. Likness's diagnosis, the basis for the doctor's diagnosis is unknown. Dr. Likness could not base his diagnosis solely on L.'s allegations of abuse. *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir.1987) (doctor's opinion based solely on patient's oral history is nothing more than patient's testimony "dressed up and sanctified"); *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir.1988) (expert opinion lacking objective factual support cannot help jury and thus is inadmissible under Rule 702). Likewise, Dr. Likness could not base his diagnosis on the vaginal findings because the vaginal findings encompass both consensual and forcible penetration and Dr. Likness could not objectively distinguish between the two. As the Government acknowledged in a pretrial hearing, L.'s consensual sexual activity deprived the doctor's vaginal findings of any probative value. *See People v. Naugle*, 152 Mich.App. 227, 393 N.W.2d 592, 597 (1986) (when child abuse victim has engaged in intercourse after alleged sexual abuse but before medical examination, doctor is not qualified to give opinion that victim was sexually abused absent evidence of condition of victim's pelvic area before abuse). On the other hand, Dr. Likness's anal findings have some significance and Dr. Likness could testify the anal findings were consistent with sexual abuse. To state L. was sexually abused based on the anal findings, however,

Dr. Likness had to believe L.'s statements about the anal sexual abuse and her statement that she had no consensual anal intercourse. Like the doctor in *Azure*, Dr. Likness was not qualified to judge L.'s truthfulness. *See also State v. Castore*, 435 A.2d 321, 326 (R.I.1981). It was for the jury, not an expert clothed in medical garb, to assess L.'s credibility and to decide whether L. came to have a dilated anus through sexual abuse by her father. Thus, Dr. Likness's overreaching diagnosis of repeated child sexual abuse was not admissible under Rule 702.

▮▮▮ Even though Dr. Likness's diagnosis was inadmissible, during the trial Whitted did not object to its admission. Whitted filed a motion in limine seeking to limit Dr. Likness's testimony to his physical findings from L.'s medical examination, but the district court denied the motion "[f]or the time being ... to be resubmitted [when the] matter is brought to my attention at the trial." The motion in limine thus failed to preserve the issue for appeal, and we review admission of the opinion under Federal Rule of Criminal Procedure 52(b). *See Huff v. Heckendorn Mfg. Co.*, 991 F.2d 464, 466 (8th Cir. 1993); *United States v. Kandiel*, 865 F.2d 967, 972 (8th Cir.1989). We have authority to correct forfeited errors under Rule 52(b) when "(1) the district court committed an error, i.e., deviated from a legal rule, (2) the error is plain, i.e., clear under current law, and (3) the error affected [the defendant's] substantial rights," i.e., prejudicially affected the district court proceedings. *United States v. Montanye*, 996 F.2d 190, 192 (8th Cir.1993) (en banc); *see United States v. Olano*, —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). We should exercise our remedial discretion to correct forfeited errors under Rule 52(b) if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano*, —— U.S. at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

Here, admission of Dr. Likness's diagnosis was a clear mistake. We had condemned the admission of an expert's testimony vouching for a victim's credibility before the trial in

this case. *See Azure*, 801 F.2d at 339–41. Indeed, the district court knew about the case law prohibiting an expert from commenting on a sexual abuse victim's truthfulness, and cautioned the prosecutor in a pretrial hearing not to elicit any expert testimony commenting on L.'s credibility. Dr. Likness's diagnosis of sexual abuse was only a thinly veiled way of stating that L. was telling the truth, and we believe the district court should have easily recognized the testimony's inadmissibility.

In addition, Dr. Likness's impermissible testimony greatly prejudiced Whitted. The Government's case against Whitted was not overwhelming. As the Government admits, the case boiled down to a believability contest between L. and Whitted. The Government heavily relied on Dr. Likness's testimony. Dr. Likness's diagnosis that L. had been subjected to repeated acts of child sexual abuse significantly enhanced L.'s believability and unfairly tilted the scales in her favor. The doctor corroborated L.'s story under the guise of a scientific diagnosis and effectively told the jury that Whitted had committed a crime. Dr. Likness identified Whitted as the perpetrator of the abuse by stating his recommendation for L.'s treatment was to avoid exposure to Whitted. Under the circumstances, we believe the error seriously affected the trial's fairness, and thus, we should exercise our discretion to correct the error under Rule 52(b).

We will briefly comment on the other issues raised by Whitted that are likely to arise on retrial. Whitted argues the district court erroneously admitted Suzanne Jacobsen's and Dr. Likness's testimony that L.'s bed-wetting, nightmares, and inability to sleep at night were consistent with her claims of sexual abuse. We have approved admission of a clinical psychologist's testimony about general emotional and psychological characteristics of sexually abused children and the children's exhibition of those traits. *St. Pierre*, 812 F.2d at 419–20. Whitted, however, asserts the Government did not lay a foundation that Ms. Jacobsen, a nurse and physician's assistant, and Dr. Likness, a general medical practitioner, were qualified to give psychological opinions.

Because Whitted objected to Dr. Likness's opinion but not to Ms. Jacobsen's opinion, we need not consider whether Ms. Jacobsen was qualified. The trial record, however, does not show Ms. Jacobsen's background in psychiatry, psychology, or sexually abused children. Indeed, Ms. Jacobsen stated L. was the first alleged child abuse victim she had examined. In contrast, the record shows Dr. Likness has attended many child sexual abuse workshops and has treated an average of three child abuse victims a month for the past several years. We believe the Government showed Dr. Likness was qualified to offer his opinion that L.'s bed-wetting, nightmares, and inability to sleep at night were consistent with her claims of sexual abuse.

Whitted also asserts Dr. Likness's testimony repeating L.'s statements to him about the abuse was not admissible under Rule 803(4) because the sole purpose of his examination was to construct a criminal case against Whitted. *See* Fed.R.Evid. 803(4) (excepting statements made for purposes of medical diagnosis or treatment from hearsay rule). We agree with Whitted that Dr. Likness may have been consulted only for the purpose of providing expert testimony in a criminal prosecution. Nevertheless, Rule 803(4) applies to statements made for the sole purpose of diagnosis, which includes statements made to a doctor who is consulted only to testify as an expert witness. *United States v. Iron Thunder*, 714 F.2d 765, 772–73 (8th Cir.1983). Thus, L.'s statements to Dr. Likness explaining what happened to her were admissible under Rule 803(4). *Id.* Because L.'s statements about her physical condition were pertinent to a medical diagnosis of sexual abuse, we cannot say the district court abused its discretion in admitting Dr. Likness's testimony repeating L.'s statements about the abuse. *See United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981).

Whitted also argues the district court lacked jurisdiction to consider the counts charging him with aggravated sexual abuse, 18 U.S.C. § 2241(c), and sexual abuse of a minor or ward, *id.* § 2243, because these

crimes were not effectively included in the statute giving the United States jurisdiction until November 1988 after the illegal acts allegedly occurred. *See* 18 U.S.C. § 1153 (Supp. IV 1986) (giving United States exclusive jurisdiction over Indian who commits certain crimes, including aggravated sexual abuse and sexual abuse of a minor or ward, within Indian country). We disagree. Since December 1986 when § 2241 and § 2243 and an amendment to § 1153 became effective, federal courts have had jurisdiction over Indians charged with violating § 2241 and § 2243 in Indian country. *United States v. Demarrias,* 876 F.2d 674, 675 (8th Cir.1989). By instructing the jury that it could only consider Whitted's conduct after December 1986 in deciding his guilt, the district court avoided any ex post facto problem.

We reverse Whitted's convictions and remand for further proceedings.