UNITED STATES, Appellee,

v.

Dudley S. ANDERSON, Technical
Sergeant, U.S. Air Force,
Appellant.

No. 97–1137.
Crim.App. No. 31996.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 1, 1998.

Decided July 30, 1999.

CRAWFORD, J., delivered the opinion of the Court, in which COX, C.J., and GIERKE, J., joined. SULLIVAN, J., filed an opinion concurring in part and in the result. EFFRON, J., filed a dissenting opinion.

For Appellant: *Lieutenant Colonel Ray T. Blank, Jr.* (argued); *Colonel Douglas H. Kohrt* (on brief).

For Appellee: *Major Karen L. Manos,* USAFR (argued); *Lieutenant Colonel Anthony P. Dattillo* and *Major Ronald A. Rodgers* (on brief); *Colonel Brenda J. Hollis.*

Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by a panel of officer and enlisted members of carnal knowledge; indecent acts with two children, K and J; communicating a threat; assault; and assault and battery, in violation of Articles 120, 134, and 128, Uniform Code of Military Justice, 10 USC §§ 920, 934, and 928, respectively. Appellant was sentenced to a dishonorable discharge, 12 years' confinement, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. We granted review of the following issues:

I. WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY ALLOWING THE TWO ALLEGED VICTIMS TO TESTIFY BEHIND A SCREEN, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSERS, WHEN THERE WAS NO BASIS TO SUPPORT SUCH A RULING.

II. WHETHER APPELLANT WAS SUBSTANTIALLY PREJUDICED BY THE TESTIMONY OF THE GOVERNMENT EXPERT WITNESS, WHICH IMPERMISSIBLY BOLSTERED THE CREDIBILITY OF THE GOVERNMENT WITNESSES ACCUSING APPELLANT, BY CONCLUDING THAT THEY WERE TRUTHFUL AND GAVE THEIR ALLEGATIONS A "STAMP OF SCIENTIFIC LEGITIMACY" AS WELL AS IMPERMISSIBLY "PROFILING" APPELLANT AS A CHILD SEXUAL ABUSER.

III. WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY INSTRUCTING THE MEMBERS THAT PRIOR STATEMENTS COULD BE CONSIDERED AS SUBSTANTIVE EVIDENCE WHEN THEY DID NOT MEET THE EXPRESS REQUIREMENTS OF MIL.R.EVID. 801(d)(1)(B) and *UNITED STATES V. MCCASKEY,* 30 MJ 188 (CMA 1990).

We resolve these issues against appellant for the reasons set forth below.

FACTS—ISSUE I

In February 1994, K testified in person during the Article 32 [1] investigation. However, on June 7, 1994, the prosecutor requested to have both K and J testify either by closed-circuit television or out of appellant's sight.

The defense objected to an *ex parte* evaluation by Dr. Linda Bessett, a licensed psychologist, of the girls' ability to testify. The defense suggested an independent, court-appointed expert conduct this evaluation with defense presence at the interview or, in the alternative, that the interview be taped. The defense also requested that the military judge conduct an *in camera* interview of the girls to assess independently each girl's emotional state. The military judge refused to prevent Dr. Bessett from conducting this interview, to permit the defense expert to be present, or to have the interview videotaped.

After the judge's ruling, Dr. Bessett interviewed the girls with Ms. Diana Schofield, a government expert in child sexual abuse, as an observer. Dr. Bessett testified concerning the effect that testifying in the presence of appellant would have upon the victims. Dr. Bessett made specific recommendations concerning the parameters of that testimony. In ruling on the government request, the military judge made the following findings of fact:

> [K] testified at the Article 32 investigation and viewed it as a very negative experience. The questions were confusing and it was a very long proceeding. [K] told Dr. Bessett that she was scared about the trial process and about being in the same room as the accused. Dr. Bessett believes it would be psychologically difficult for her to

1. Uniform Code of Military Justice, 10 USC § 832.

testify in court and face the accused, but believes the accused [sic] could identify the accused in court and testify in his presence, as long as she did not have to look at him for a long period of time. Her anxiety level will be very high. Dr. Bessett's professional opinion is that [K] could testify either behind a screen, or in a position where the accused was not in direct line of sight with her.

On 12 August 1994, Dr. Bessett separately interviewed [J] and her mother ... [who] reported her daughter was having nightmares again. [J] stated she was afraid the accused would kill her, having allegedly threatened to do so while the alleged abuse was occurring. In Dr. Bessett's opinion, [J] is very scared of the accused, and would not be able to testify if she could see the accused. A tour of the court room did not help her, and her fear is overwhelming. She believes [J] could psychologically cope with identifying the accused from a picture, but she could not cope with identifying the accused in person. Dr. Bessett's professional opinion is that [J] can testify under limited conditions because of her fear of the accused. Specifically, the preference would be for her to testify in a separate room with only a trial and defense counsel present and she could not see the accused or court members. Alternatively, she believes she may be able to testify behind a screen.

The military judge announced the procedure that would be used in light of his findings:

> [K] will be allowed to testify facing away from the Accused, directly facing the court members. [J] will be allowed to testify facing the Trial Counsel. The closed circuit television camera will project their images to a television which will be positioned for the military judge, Defense Counsel, the Accused and Court Reporter to see. And, I note the way the t.v. is set-up right now, I can't see, but it appears I should be able to see the faces of the witnesses from where I'm sitting. A screen will not be set up for [K] unless it's [sic] presence appears to become necessary. A screen will be positioned along the side of the witness box for [J]. The

witnesses may already be on the stand before the military judge and members come into the room. The Accused will be seated at the seat at the Defense Counsel table which is farthest away from the witnesses. Cross-examination of the witnesses will be done in such a position of the courtroom that the vision of the witnesses conforms with the spirit of this ruling. The witnesses will be instructed to speak up and to let the Court know when they need a break. Additionally, the witnesses will be allowed to have a victim witness representative sit next to them, but that person will be instructed beforehand not to give any cues or anything to the witnesses.

Further accommodation was directed so that the two defense counsel would have eye contact with each other to facilitate communication, and the military judge indicated that there would be latitude to permit counsel to communicate as needed. Defense counsel renewed his objection to the procedures as a denial of due process.

Prior to K taking the stand, the military judge gave the following instruction concerning the special measures taken to facilitate her testimony:

> Members of the court, ... as you can see, a television monitor is being set up and there are video cameras in the courtroom. I have determined that the courtroom will be arranged in the manner that you see it. The witness will be seated in front of me here, facing you the court members with a closed-circuit video camera transmitting the picture of the child testifying on a television monitor so the defense and the Accused can see her face, because she will be facing away from them towards you. You are instructed that you may not draw any inference against or for either side based upon the way the courtroom is arranged during the testimony of [K]. The decision to arrange the courtroom in this manner is one that I made. You should evaluate the testimony of [K] the same as all of the other witnesses, and not take into account the arrangement of the courtroom in evaluating any witnesses [sic] testimony.

I will later give you a more detailed instruction on the credibility of a witness. I again, specifically instruct you that you cannot and must not infer anything for or against either party based upon my decision to arrange the courtroom in this manner. Additionally, I would instruct everyone in the courtroom to not indicate in any way that anyone is behind the television screen that we have here. This applies to the spectators as well as the parties.

One additional accommodation was made after K was initially unable even to approach the witness stand:

> However, having observed her walk into the courtroom, face the members, the Accused and all of the spectators, I make a finding of fact that she was unable to even approach the witness stand and had to leave the courtroom saying, under her breath, "I can't do this," or words to that affect.

The screen and television equipment were repositioned and appellant was asked to leave the room until K was seated. The defense concedes that the judge gave an instruction not to draw any inferences from the procedures being used.

## DISCUSSION—ISSUE I

The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This is a fundamental right. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Id.* at 405, 85 S.Ct. 1065.

■ The Confrontation Clause "reflects a preference for face-to-face confrontation at trial." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *see also Maryland v. Craig*, 497 U.S. 836, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)("a prefer-

ence that 'must occasionally give way to considerations of public policy and the necessities of the case'")(quoting *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 39 L.Ed. 409 (1895)). Normally, the Confrontation Clause requires the defendant's presence and ability to see the accusatory witnesses. Exceptions may be made. A second aspect of the Confrontation Clause is that the witnesses are under oath. A third is that the defendant has the right to have the finders of fact evaluate the demeanor of the witnesses. Fourth, the Confrontation Clause includes the right to cross-examine these witnesses. *See California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). While this right is fundamental, it is not absolute. *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)("Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."). There are various interests that must be balanced against the defendant's right of confrontation, including the Government's "strong interest in effective law enforcement," *Roberts, supra* at 64, 100 S.Ct. 2531, the state's compelling "interest in the physical and psychological well-being of a minor victim," *Craig, supra* at 852, 110 S.Ct. 3157, and the "societal interest in accurate factfinding." *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

■ The right of confrontation may yield to an important public policy when the reliability of the testimony at issue is otherwise assured. *Maryland v. Craig, supra.* In *Craig*, closed-circuit television was approved in a case involving a child victim where: "(1) there was a case-specific finding that testimony by the child in the presence of the defendant would cause the child to suffer serious emotional distress such that the child could not reasonably communicate; (2) the impact on the child would be 'more than *de minimis*'; (3) the child testified via one-way closed-circuit television, enabling the judge, jury, and defendant to observe the child's demeanor during testimony; and (4) the

child was subject to full cross-examination." *United States v. Longstreath*, 45 MJ 366, 372 (1996), citing *Craig, supra* at 856–57, 110 S.Ct. 3157. As illustrated in *Longstreath*, any deviations from the common form of confrontation must ensure the reliability of the evidence.

■■■ This Court has upheld various methods of obtaining testimony without face-to-face confrontation between an accused and a child victim. *See United States v. Williams*, 37 MJ 289 (CMA 1993)(child testified from a chair in the center of the courtroom); *United States v. Thompson*, 31 MJ 168 (CMA 1990)(children testified with their backs to the accused, but facing the judge and counsel); *but see United States v. Daulton*, 45 MJ 212 (1996)(accused excluded but permitted to observe the child through closed-circuit television). To support a determination to limit the right to face-to-face confrontation, the military judge must make a finding of necessity, *i.e.*, that there is a likelihood that the child will suffer at least moderate emotional and mental harm if required to testify in the accused's presence. *See D.A.D. v. State*, 566 So.2d 257 (Fla.App. 1990). This finding is a question of fact which "will not be reversed unless it is clearly erroneous or unsupported by the record." *Longstreath, supra* at 373, citing *United States v. Carrier*, 9 F.3d 867, 870–71 (10th Cir.1993).

■■ The military judge's determination of necessity in the instant case is supported by the record. Dr. Bessett's expert opinion provided a sound, adequate basis upon which the military judge considered whether each of the child victims could testify and under what circumstances each could communicate. When it became obvious that K could not even take the witness stand, the military judge had a clear basis upon which to modify his initial ruling and permit K to testify behind the screen. *See Longstreath, supra* at 373. The expert testimony and the military judge's own observation thus permitted the judge to determine that the impact on the two girls was more than *de minimis*. The arrangement of televisions and screens was such that all parties could see each child

testify, and the defense was able to conduct full cross-examination while maintaining communications amongst themselves and with appellant.

Under these circumstances, we hold that the military judge committed no error materially prejudicial to appellant's substantial rights; nor was appellant improperly denied his right to face-to-face confrontation.

## FACTS—ISSUE II

Appellant characterizes the testimony of the government expert on child sexual abuse, Ms. Schofield, as profile evidence which impermissibly labeled him as a child sexual abuser. He complains that the expert also impermissibly vouched for the truthfulness and credibility of the two child victims. Appellant acknowledges that he did not object to testimony which allegedly implied the girls were telling the truth or that sexual abuse had occurred. Nor, we note, did appellant object to the qualifications of Ms. Schofield or to any evidence from her which allegedly labeled him as a child sexual abuser.

Ms. Schofield described the elements of Child Abuse Accommodation Syndrome and explained that it was a pattern of behavior used to explain misleading and contradictory actions by child victims of abuse. Trial counsel then asked her to relate the facts of the case to the various elements of the syndrome. Ms. Schofield noted that appellant, as an adult and baby-sitter, "did have the power and he did have the access and did threaten, or allegedly threatened the children." In discussing the element of delayed disclosure, Ms. Schofield noted that, when K "saw a car that resembled [appellant's] in the housing area," it was "very significant" and "scared her." It is this testimony which appellant claims labeled him as a child abuser and attempted to vouch for the credibility of the child victims.

Appellant further attacks this line of questioning because, by relating facts of this case as made known to her, Ms. Schofield was allegedly telling the members that the children were victims and they should be believed. Appellant asserts that, because Ms.

Schofield vouched for the credibility of the children and labeled appellant as a child abuser, this error was obvious and substantial. Further, because the primary issue was credibility, appellant urges that this was prejudicial error requiring corrective action.

### DISCUSSION—ISSUE II

■■■■ It is clear from the cases of this Court that an expert "can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits." *United States v. Birdsall*, 47 MJ 404, 409 (1998), quoting *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir.1993). A qualified expert can also "summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse." *Id.* But the expert may not express an opinion on the "ultimate issue of sexual abuse." *Id.* Nor can an expert serve as a human lie detector for the court-martial. As we stated in *Birdsall, supra* at 410, "testimony which is the 'functional equivalent' of an expert's opinion that the victim should be believed is inadmissible."

■■■■ Ms. Schofield did not opine that the children were, in fact, abused or that appellant did, in fact, commit the abuse. *See United States v. Birdsall, supra; United States v. Harrison*, 31 MJ 330 (CMA 1990). Ms. Schofield related the elements of the syndrome and indicated which elements were present, given the facts of this case. She explained why certain facts she had been provided were significant in the context of the syndrome.

Additionally, Ms. Schofield was not permitted to assert that the children were credible. *See United States v. Birdsall, supra;* Mil. R.Evid. 608(a), Manual for Courts–Martial, United States (1994 ed.).[2] When Ms. Schofield ventured into the area of credibility, the military judge sustained defense counsel's objection. Upon further objection, the military judge immediately instructed the members as follows:

Members of the Court, you're advised that only you the members of the Court determine the credibility of witnesses in what the facts of this case are. No expert, witness or other witness can testify that the alleged victim's account of what occurred is true or credible, or that the expert believes that the alleged victims, or that the expert believes the alleged victims, [sic] or that a sexual encounter occurred. To the extent that you believed that Miss Schofield has testified or implied that she believes the alleged victims or that a crime occurred or that the alleged victims are credible, you may not consider this as evidence that a crime occurred or that the alleged victims are credible.

These actions by the military judge assured that impermissible evidence did not get to the members and that any perception that the expert was testifying about credibility or the actual commission of an offense was erased. Ms. Schofield's testimony adhered to the permissible limits of expert testimony. *See United States v. Suarez*, 35 MJ 374 (CMA 1992).

We hold that the proffered testimony was permissible. Regardless, we hold that there was no plain error.

■■■■ Because there was no objection to Ms. Schofield's testimony, appellant may only prevail if there was plain error.

Plain error is a doctrine that "is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Strachan*, 35 MJ 362, 364 (CMA 1992), quoting *United States v. Fisher*, 21 MJ 327, 328–29 (CMA 1986), quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982). "To establish plain error, appellant must demonstrate: that there was 'error'; that such error was 'plain, clear, or obvious'; and that the error 'affect[ed]' appellant's 'substantial rights.'" *United States v. Czekala*, 42 MJ 168, 170 (1995), quoting

---

**2.** All Manual provisions are cited to the version applicable at the time of trial. The 1998 version

is unchanged, unless otherwise indicated.

United States v. Olano, 507 U.S. 725, 732, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993).

United States v. Hall, 46 MJ 145, 146–47 (1997).

■ Any error herein was not plain and substantial. United States v. Powell, 49 MJ 460 (1998). Appellant was categorized as an authority figure (baby-sitter and adult), not as a child molester. Such an obvious conclusion is harmless and does not distort the fairness of this trial to such an extent that application of plain error is warranted.

■ Similarly, with respect to any contention that Ms. Schofield vouched for the credibility of the children, there is no plain error. Defense counsel's objection was sustained and an instruction was given. Full relief was afforded to appellant in a timely manner. Thus, not only was any perceived error corrected on the spot, but any potential prejudice was eradicated.

■ Within this issue, appellant makes two other related assertions. First, he implies that Ms. Schofield was not qualified as an expert. This claim is easily disposed of. Ms. Schofield had specialized training and experience which would assist the trier of fact and clearly qualified her as an expert. Mil.R.Evid. 702. During voir dire, defense counsel inquired into Ms. Schofield's qualifications and affirmatively stated that he had "no objections" to trial counsel's offer of Ms. Schofield as an expert in child sexual abuse. Any claim that Ms. Schofield was not qualified was waived. Under the circumstances, there is obviously no plain error.

■ Next, appellant claims that Child Abuse Accommodation Syndrome did not meet the foundational requirements for the admissibility of scientific evidence. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Clearly, the military judge did not abuse his discretion in admitting this testimony. First, such evidence is admissible. See United States v. Birdsall, and United States v. Suarez, both supra. Second, failure to object waives this alleged defect. United States v. Johnson, 35 MJ 17, 22 (CMA 1992).

Finally, under the circumstances, as noted above, there is no basis to invoke the plain error doctrine. We hold that there was no error that "materially prejudice[d] the substantial rights of [appellant]." Art. 59(a), UCMJ, 10 USC § 859(a).

## FACTS—ISSUE III

Appellant contends that the military judge erred when he instructed the members that they could consider several statements by K and J as prior consistent statements. The military judge's instructions, in relevant part, were as follows:

> You have heard evidence that the witness [K] made statements prior to trial that may be consistent with her testimony at trial, specifically, that the abuse began in the Summer of 1990; the bleeding happened in the living room; he put his private part in her private part; his threat that he would not allow her to play with [his daughter]; and she told [her friend] that he was doing stuff to her too. You have heard evidence that the witness [J] made statements prior to trial that may be consistent with her testimony at trial, specifically, that he put a knife to her neck; he threatened her with a gun; he threatened to kill her; he put a pillow over her face; and he touched her "boob" with his fingernail. If you believe that such a consistent statement was made, you may consider it for its tendency to refute the charge of improper influence or improper motives. You may also consider the prior consistent statement as evidence of the truth of the matters expressed therein.

When trial counsel requested this instruction and produced a list of statements which she wished to be included in the instruction, defense counsel objected primarily on the basis that Mil.R.Evid. 801(d)(1)(B) required that the statement "be offered at trial in rebuttal to a rebutted [sic] claim of recent fabrication, improper influence or motive." Defense counsel noted that certain of these statements were "not offered in rebuttal to anything," and that it was the defense, not the Government, which brought the statements out for the record.

Appellant's argument here is that these statements were not admitted as prior consistent statements and that, by instructing on them as such, the military judge erred to appellant's prejudice by allowing the members to consider the statements as substantive evidence. The Government concedes that the military judge's characterization of the statements as prior consistent statements was incorrect but asserts that the instruction that the members could consider the statements as substantive evidence was nonetheless correct. The Court of Criminal Appeals reached a similar conclusion, unpub. op. at 8, and we agree.

## DISCUSSION—ISSUE III

None of the statements here were specifically admitted as prior consistent statements pursuant to Mil.R.Evid. 801(d)(1)(B). That rule applies to statements made prior to trial which are consistent with the witness's testimony and which are "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." In a typical scenario, the defense counsel would try to impeach a witness's credibility, and the trial counsel would try to rehabilitate the witness's credibility by introducing a prior consistent statement. *See United States v. McCaskey*, 30 MJ 188 (CMA 1990). The issue there would be whether the out-of-court statement was properly admitted.

That is not the scenario presented by this case, however. Here, the defense strategy, in part, was to show that K's and J's testimony was not credible and was the result of coaching by adults. As part of that strategy, defense counsel questioned the girls about statements they had made prior to trial and attempted to point out inconsistencies. In actuality, the defense ended up soliciting affirmations of their testimony. Thus, the statements in issue were, in large part, presented to the members by defense counsel. Having been presented as such, the statements were already substantive evidence

which the members could consider for their truth if they chose to believe them.

The question before us, then, is whether or not the instruction otherwise prejudiced appellant by highlighting the statements for the members just prior to deliberations.

We review a challenge of instructional error using an abuse of discretion standard. *United States v. Damatta–Olivera*, 37 MJ 474, 478 (CMA 1993), *cert. denied*, 512 U.S. 1244, 114 S.Ct. 2760, 129 L.Ed.2d 875 (1994). A military judge "has substantial discretionary power in deciding on the instructions to give." 37 MJ at 478. Based on the evidence presented in this case, we cannot say that the military judge abused his discretion by instructing the members on these statements.

The testimony of these young victims was a substantial part of the evidence presented in a strong case. Statements such as, "He put his private part in my private part," and, "He threatened me with a gun," were likely to stand out in the members' minds as they deliberated. The defense itself highlighted the testimony of these girls by attempting to impeach them with their own prior statements. Appellant should not now be allowed to retreat from that strategy because it was unsuccessful. Nor should appellant now be allowed to fault the military judge for that lack of success. *Cf. United States v. Raya*, 45 MJ 251, 254 (1996)("Invited error does not provide a basis for relief."); *United States v. Schnitzer*, 44 MJ 380, 384 (1996)(Everett, S.J. and Gierke, J., concurring in the result)("[S]ince to a considerable extent the error was invited by the defense, I conclude that this accused is not entitled to relief."); *United States v. Johnson*, 26 F.3d 669, 677 (7th Cir.1994); *A.E. v. Independent School District No. 25*, 936 F.2d 472, 476 (10th Cir.1991).

In addition, there were at least two statements to which defense counsel failed to object but which were ultimately included in the instruction: 1) "that the abuse began in the Summer of 1990," and 2) "[K] told [her friend] that he was doing stuff to her too." [3]

3. Defense counsel's objection to a third statement proposed by the Government is somewhat unclear on the record. Trial counsel proposed including the statement, "The bleeding happened

Regardless of our analysis above, with regard to these statements, appellant has waived his challenge, Mil.R.Evid. 103, and we find no plain error. *See Powell*, 49 MJ 460.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and in the result):

I disagree with the majority's reasoning in deciding the third issue. The third granted issue asks:

### III

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY INSTRUCTING THE MEMBERS THAT PRIOR STATEMENTS COULD BE CONSIDERED AS SUBSTANTIVE EVIDENCE WHEN THEY DID NOT MEET THE EXPRESS REQUIREMENTS OF MIL.R.EVID. 801(d)(1)(B) AND *UNITED STATES V. MCCASKEY*, 30 MJ 188 (CMA 1990).

In my view, any error in instructing the members that the alleged victims' pretrial statements could be considered as substantive evidence in this case was harmless beyond any doubt.

The trial judge gave the following instructions with respect to evidence of pretrial statements by the alleged victims in this case:

Now, you have heard evidence that the witness [K] made a statement prior to trial that may be inconsistent with her testimony at this trial, specifically, her statement that [B] told her the Accused was doing stuff to her also, and she did not see a scar on the Accused. You have heard evidence that the witness Petty Officer [R] made statements prior to trial to Petty Officer [D] that may be inconsistent with his testi-

mony at trial, specifically, that he possessed and watched pornographic videos, [K] saw he and his wife having sexual intercourse, and she was on his back on one occasion when they were having sexual intercourse. You have heard evidence that the witness [L] made statements to [B] that they possessed pornographic videos and that [K] had seen her and Petty Officer [R] engaged in sexual intercourse. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the testimony of [K] and Petty Officer [R] and L. You may not, however, consider the prior statement as evidence of the truth of the matters contained in that prior statement.

*You have heard evidence that the witness [K] made statements prior to trial that may be consistent with her testimony at trial,* specifically, that the abuse began in the Summer of 1990; the bleeding happened in the living room; he put his private part in her private part; his threat that he would not allow her to play with [T]; and she told [B] that he was doing stuff to her too. *You have heard evidence that the witness [J] made statements prior to trial that may be consistent with her testimony at trial,* specifically, that he put a knife to her neck; he threatened her with a gun; he threatened to kill her; he put a pillow over her face; and he touched her "boob" with his fingernail. If you believe that such a consistent statement was made, you may consider it for its tendency to refute the charge of improper influence or improper motives. *You may also consider the prior consistent statement as evidence of the truth of the matters expressed therein.*

(Emphasis added.)

Prejudice, however, from such *substantive use* instructions, even if erroneous, is hard to

---

in the living room, and resulted in blood in my underwear." Defense counsel's objection appears to be only to the second part of the sentence: "In regards to C, the bleeding happened in the living room, and resulted in blood in my underwear. Regarding the blood in the underwear, we would ask that you add to the inconsistent list that she told Lieutenant Crescenzi that no blood was in the underwear.... And we

would object to that being consistent because it was not offered in rebuttal to anything." The military judge, in fact, only used the first part of the sentence in his instruction. The Court of Criminal Appeals appears to have considered defense counsel to have not objected to that part of the statement actually used in the instruction. We will also consider defense counsel to have failed to object to that statement.

imagine for several reasons. First of all, the two alleged victims testified that appellant committed the charged offenses. Second, the pretrial statements were never admitted in this case. Third, the defense first cross-examined the alleged victims about various details in these statements, and when acknowledged by the witnesses, it also had them confirm the previously asserted facts as true. Finally, the victims' testimony on the prior statements added no material fact not covered in their in-courtroom testimony.

In addition, the defense cross-examined the alleged victims about prior statements they had made concerning the charged incidents, in hopes of contradicting their trial testimony with their pretrial statements. This was permissible, although ultimately unsuccessful, impeachment under Mil.R.Evid. 609 and 613, Manual for Courts–Martial, United States (1994 ed.). *See United States v. Banker*, 15 MJ 207, 210 (CMA 1983). The defense did not attempt to limit the use of the witnesses' answers to the issue of their credibility. *See* Mil.R.Evid. 105. It waited until after the witnesses testified and after the Government requested during the closing instructions that the evidence be considered substantively. In my view, their belated concern under the circumstances of this case was too late. *See generally United States v. Taylor*, 44 MJ 475, 480–81 (1996).

EFFRON, Judge (dissenting):

At the time of his trial, appellant was a Technical Sergeant in the Air Force with over 19 years of service. The offenses of which appellant was convicted alleged various forms of child abuse involving K, who was 11 years old at the time of trial, and J, who was 9 years old at the time of trial. K, who first made the allegations of the abuse, did not do so until nearly 2 years after she had last seen appellant. Appellant testified on his own behalf and denied the allegations. The heart of the defense case pitted appellant's credibility against the testimony of K and J.

As noted in the majority opinion, the first granted issue involves the Confrontation Clause of the Sixth Amendment, which pro-vides that an accused "shall enjoy the right ... to be confronted with the witnesses against him." The Supreme Court, as noted by the majority, has described this as a "fundamental requirement for the kind of fair trial which is this country's constitutional goal," *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), providing "a preference for face-to-face confrontation at trial." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the primary case relied upon by the majority, the Supreme Court recognized a very limited exception:

> [I]f the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

*Id.* at 855, 110 S.Ct. 3157.

*Craig* provided that "[t]he requisite finding of necessity must of course be a case-specific one." According to the Supreme Court, an alternative procedure must be the product of evidence that supports a finding: (1) that the alternative procedure "is necessary to protect the welfare of the particular child witness who seeks to testify"; (2) that the child witness would be traumatized, "not by the courtroom generally, but by the presence of the defendant"; and (3) that "the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.* at 855–56, 110 S.Ct. 3157.

The Court emphasized that "courtroom trauma," by itself, does not provide a sufficient basis to justify denial of face-to-face confrontation. There must be a showing that "it is the presence of the defendant that causes the trauma." *Id.* at 856, 110 S.Ct. 3157.

*Craig* sets a rigorous standard, which requires rigorously fair procedures. In the

present case, the military judge failed to apply the procedural safeguards necessary to ensure fair consideration of appellant's constitutional rights.

This is not a case in which the victim was so traumatized by the events that she could not communicate in an adversarial proceeding. Prior to trial, K testified at the Article 32[1] hearing in the presence of appellant. There is no indication in the record of the Article 32 proceeding that the presence of appellant produced the type of trauma discussed in *Craig*. On the contrary, K testified at length and provided detailed testimony about the alleged offenses.

Prior to trial, the prosecution filed a written "Motion for Alternative Forms of Child Testimony," in which it asked for an Article 39(a)[2] hearing "to determine whether [J] and [K] are able to testify in front of the accused at trial." The Government indicated that it would offer expert testimony at the hearing that would be based on psychological interviews of the children that ha 1 been scheduled but not yet conducted.

The Government represented that it expected the expert to state that if the children were required to testify in the physical presence of appellant, each "would undergo serious emotional distress, such that the child would be unable to communicate;" and that such stress "would be more than *de minimus*, and would result, primarily, from the physical presence of the accused in the courtroom." The prosecution moved that, if such conclusions were reached by the expert, both J and K be permitted to testify by closed-circuit television or "in such a manner as to avoid eye contact with the accused."

Defense counsel filed a written response to this motion. The defense objected to an *ex parte* examination by an expert of the prosecution's selection and argued that the better approach was to have the examination done by a court-appointed military child psychologist. As an alternative, the defense asked that its own expert be permitted to attend any examinations done by the Government's expert. The defense also requested that any

such interviews be videotaped. Finally, counsel asked that the military judge, after hearing the expert testimony, undertake an *in camera* interview of the girls to assess their emotional state and to ascertain the understanding of the girls as to the purpose of the examinations.

The military judge denied the defense motions. Thereafter, the prosecution's psychologist conducted *ex parte* interviews of K and J. At a subsequent Article 39(a) session, the psychologist described her interviews of the children. On the basis of those interviews, the psychologist recommended that J be allowed to testify via closed-circuit television. The psychologist also concluded that K could testify in court without any special procedures.

Subsequently, trial counsel moved that a screen be installed in the courtroom during the testimony of K and J to block their view of appellant. She also moved that appellant not be allowed in the courtroom until after the witness was seated in each instance, and that appellant be required to leave the courtroom before each witness departed.

Defense counsel objected to these procedures. He noted that K had testified at length at the Article 32 hearing with appellant in the same room and argued that, while she might have some anxiety, she would be able to testify. "[S]he's done it before, she can do it again."

Without conceding the need for any alternative format with respect to J, he contended that the preferred method under Supreme Court caselaw was to use closed-circuit television, with the witness and counsel in another room and hooked up by audio and video to the courtroom, rather than a screen.

The military judge ruled that J could testify with a screen but that K would testify facing the members and facing away from appellant without a screen unless the screen "appears to become necessary." He ruled that a closed-circuit television camera would project to a monitor "which will be positioned

---

1. Uniform Code of Military Justice, 10 USC § 832.

2. UCMJ, 10 USC § 839(a).

for the military judge, Defense Counsel, the Accused and Court Reporter to see."

When K was called as a witness, she walked into the courtroom and sat at the witness stand in front of the members, the spectators, and the participants in the court-martial. After she reached the stand, however, her testimony did not begin. Instead, the military judge provided detailed instructions to the members about the television monitor and cameras, ensured that the equipment was working, ruled on whether a government expert could sit at the prosecution table, and further instructed the members as to the purpose of the victim-witness advocate who was seated beside K.

After facing the courtroom while all this activity was undertaken, K spoke privately to trial counsel, and trial counsel requested a recess. When the proceedings reconvened in an Article 39(a) session without K on the stand, trial counsel revealed that K had asked that appellant be excluded from the courtroom when she entered. The military judge asked whether a screen was needed, and trial counsel responded that that was an option. Trial counsel continued:

> I think at this point it would make it easier if she had the screen. However, if the court dictates otherwise, we'll at least try to get her to talk the way the courtroom is set up at this point.

The military judge, without examining the witness or obtaining any further testimony from the psychologist, not only granted the prosecution's request, but also—on his own motion—expanded his original ruling to permit K to testify from behind a screen.

The military judge's ruling did not reflect the teaching of *Craig* that confrontation may not be denied absent a finding that the child witness would be traumatized, "not by the courtroom generally, but by the presence of the defendant," and that the distress suffered by the child is "more than 'mere nervousness or excitement or some reluctance to testify.'" *Craig*, 497 U.S. at 855–56, 110 S.Ct. 3157. The military judge simply noted:

> However, having observed her walk into the courtroom, face the members, the Accused and all of the spectators, I make a

finding of fact that she was unable to even approach the witness stand and had to leave the courtroom saying, under her breath, "I can't do this," or words to that affect.

This ruling provides an insufficient basis to justify denying appellant his constitutional right of confrontation where the prosecution's expert witness did not recommend that this witness testify behind a screen, where the judge's initial ruling did not order such a measure, and where there was no examination of the witness by the court or an expert to resolve the ambiguity as to the cause of her reluctance to testify.

The end result was that K testified in a courtroom environment modified in a manner that identified appellant before the members of the court-martial as a person to be feared, a person whose impact on the witness was so traumatizing that extraordinary measures were warranted in the courtroom. When such measures are taken without an adequate showing of necessity, they are unconstitutional. *United States v. Craig, supra.*

In recent years, those responsible for the criminal justice system in general and the military justice system in particular have become increasingly aware of the adverse impact on individuals and society that flows from an insensitivity to the rights and needs of victims and witnesses. *See, e.g.,* Victim Rights Clarification Act of 1997, Pub.L. No. 105–6, 111 Stat. 12; Victims' Rights and Restitution Act of 1990, Pub.L. No. 101–647, 104 Stat. 4820; Department of Defense Directive 1030.1. Sensitivity to such concerns, however, does not require disregard of the basic constitutional rights of accused servicemembers.

The prospect of testifying in court, particularly as a victim who must face the accused, is not something that most people would relish. Under *Craig,* it is appropriate for a court to be particularly sensitive to the impact on a victim of tender years. The obligation to face the accused, however,

is enshrined in our Constitution and may be limited only under the narrowly defined circumstances set forth in *Craig.* Failure to follow those procedures in this case created an environment in the courtroom prejudicial to the substantial rights of appellant.