# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

ALEXANDER LUKASHOV, Jr., AKA
Aleksandr Lukashov, Jr.,
                *Defendant-Appellant.*

No. 10-30348

D.C. No.
3:09-cr-00120-BR-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
February 6, 2012—Seattle, Washington

Filed September 18, 2012

Before: Mary M. Schroeder, Arthur L. Alarcón, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

Per C. Olsen, Hoevet, Boise & Olsen, P.C., Portland, Oregon, for the defendant-appellant.

Kelly A. Zusman, United States Attorney's Office, Portland, Oregon, for the plaintiff-appellee.

**OPINION**

GOULD, Circuit Judge:

Alexander Lukashov, Jr. appeals his jury conviction for aggravated sexual abuse in violation of 18 U.S.C. § 2241(c). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

**I**

**A**

In February 2009, Alexander Lukashov, Jr., who worked as a long-haul truck driver in Portland, Oregon, was in a rela-

tionship with Cassedy Filer ("Cassedy"). Lukashov and Cassedy lived together with their two young children and Cassedy's son and daughter from a previous marriage, J.F. and T.F. Her son J.F. was then six years old, and her daughter T.F. was eight. Before Lukashov's departure on a long-haul trip to New York, Cassedy asked him to take J.F. to her relatives in Montana and to take T.F. along on the trip. Lukashov agreed, and he, J.F., and T.F. left Portland on February 5. Lukashov picked up a load in Washington, dropped J.F. off in Montana, and proceeded, with T.F. in his truck, to take his cargo to New York. He drove east to New York and delivered the Washington load there. He picked up another load in New York for delivery in Nevada. He then drove west with T.F. and delivered the New York load in Nevada. There he picked up still another load, destined for Portland. From Nevada, he drove west and north, and returned to Portland with T.F. on February 18.

From the evidence introduced at trial, we see that Lukashov was doing more than just driving his long-haul truck with T.F. after he dropped J.F. off in Montana. Once returned to her home and mother, T.F. told a tale of serial sexual abuse by Lukashov as she traversed the country with him in his truck.

Once Lukashov and T.F. had returned to her home, after Lukashov had left the house, T.F. told her mother that Lukashov had sexually abused her on the trip. T.F. described the abuse and showed her mother bruises that she said Lukashov had given her. When, a few days after T.F.'s return, the police came to the house to arrest Cassedy on an outstanding warrant, Cassedy reported the sexual abuse, and a police officer spoke to T.F. The police took a pair of T.F.'s underwear and a pink blanket from the trip as potential evidence, and arrested Cassedy.

Cassedy's sister, Katie White, took T.F. to CARES Northwest ("CARES") for an examination. CARES is a medical clinic that specializes in child abuse and is part of a multi-

disciplinary child abuse team that is overseen by the district attorney's office. Dr. Linda Lorenz is a pediatrician who evaluates children for abuse and neglect at CARES. To evaluate a child, Lorenz does a medical examination and is assisted by an interviewer to gain more information pertinent to the child's diagnosis and treatment.

Together, Dr. Lorenz and Rachel Petke, a social worker at CARES, evaluated T.F. Lorenz conducted a physical examination of T.F. T.F.'s genital exam and anal exam were normal, but Lorenz found "abnormal" bruises on the inside of one knee and on the side of T.F.'s left hip. Lorenz asked T.F. why her aunt had brought her to CARES. T.F. said that she had gone on a trip with her "dad" and J.F. and that on the trip Lukashov had anally penetrated her and had tried to vaginally penetrate her but "couldn't." T.F. described the abuse to Lorenz in the language of an eight-year-old, saying, for example, that Lukashov had put his "private part" in "the part where the poop comes out" and that he had tried to put it in her "crotch." Lorenz also asked T.F. about the bruises on her body. T.F. said that she got the bruise on her knee from Lukashov after he made her take off her pants and underwear and get on her hands and knees, and that she got the bruise on her hip from Lukashov grabbing her hip and "going really fast." T.F. added that there had been a bruise on her other hip that had faded.

After the physical examination, Petke interviewed T.F. The interview was videotaped, and Dr. Lorenz and a police officer observed it through a mirror. T.F. gave Petke a more detailed account of the sexual abuse than she gave Lorenz. T.F. said that the abuse happened after J.F. was dropped off in Montana and that it happened more than once, in Montana, North Dakota, and Nevada. T.F. said that the abuse took place in the semi-truck and in a hotel room in Nevada. T.F. told Petke, as she had Lorenz, that Lukashov had anally penetrated her and that he had tried unsuccessfully to vaginally penetrate her. She also said that Lukashov had made her perform oral sex

on him and ejaculated in her mouth. T.F. gave age-appropriate descriptions, saying, for example, that Lukashov had tried to "shove it in [her] porcupine" and that when Lukashov put his "private part" in her mouth, "white stuff" that tasted "[l]ike foamy" had come out.

**B**

Lukashov was charged with aggravated sexual abuse in violation of 18 U.S.C. § 2241(c) (Count 1), travel with intent to engage in illicit sexual contact in violation of 18 U.S.C. § 2423(b) (Count 2), and transportation with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a) (Count 3). Lukashov pleaded not guilty.

The district court ruled on several evidentiary matters before trial. Lukashov had moved to exclude T.F.'s statements to Dr. Lorenz and Rachel Petke at CARES, and the district court denied this motion. Lukashov also had moved *in limine* to admit evidence of prior acts of Cassedy Filer to show that she had a pattern of making false allegations against her partner in a relationship. The district court ruled that Lukashov could offer opinion or reputation evidence of Cassedy's bad character for truthfulness but not evidence of specific prior acts. The district court held a *Daubert* hearing on the proposed testimony of Dr. Lorenz about characteristics of child sex abuse victims, and then held that Lorenz could testify about characteristics that she looks for in child sex abuse victims and that T.F.'s physical examination and statements during the CARES evaluation were consistent with her allegations of sexual abuse.

The trial by jury lasted five days, and resulted in Lukashov's conviction. T.F. testified at trial, and the district court also admitted the video of her interview with Rachel Petke, giving the jury two opportunities to hear T.F.'s version of events. Dr. Lorenz described T.F.'s CARES evaluation, explained that child victims of sexual abuse can have normal

genital and anal exams several days after the abuse, and testified that her physical findings and observations of T.F. were consistent with T.F.'s allegations of sexual abuse. Forensic scientist Amy Wilson testified that she found spermatozoa on fabric cuttings from the interior crotch and interior seat areas of T.F.'s underwear given to the police, and that the DNA profile of the spermatozoa matched Lukashov's DNA profile. No seminal fluid was found on the underwear, however, and no spermatozoa or seminal fluid was found on the pink blanket.

Lukashov testified in his own defense, and denied any abuse. An important part of Lukashov's theory of defense was his allegation that Cassedy had coached T.F. into making false allegations against him because Cassedy wanted to gain a tactical advantage in the pending breakup of their relationship. Lukashov testified that after returning from the trip with T.F., he told Cassedy more than once that their relationship was over, that Cassedy asked him to come back, but that in his mind, it was over.

On the third day of trial, at the close of the government's case-in-chief, Lukashov moved for a judgment of acquittal on the ground of improper venue. The parties disagreed about whether venue was a fact issue for the jury or a question of law for the court and whether venue existed under either or both paragraphs of the applicable venue statute, 18 U.S.C. § 3237(a). The district court recognized our precedent that normally it is not for the court to determine venue and that it is error to not give a requested instruction on venue.[1] The district court denied Lukashov's motion because it concluded that the government's evidence, if credited by the jury, was sufficient to show venue under either paragraph of § 3237(a). Because of the varying theories on which venue might be based, the district court decided to submit venue to the jury on each of the possible theories urged by the government, "in

---

[1]*See United States v. Casch*, 448 F.3d 1115, 1117 (9th Cir. 2006).

an effort to minimize any need for the child victim to testify again in any retrial ordered because of the venue issues."

Lukashov also moved for a judgment of acquittal for insufficient evidence of purpose on all three counts, and the district court denied this motion as well.

The district court instructed the jury on the elements of each of the charged crimes, and gave the following instruction on venue:

> In addition to its burden to prove every element of each of the Counts against the Defendant beyond a reasonable doubt, as I am about to instruct you, the government must also prove by a preponderance of the evidence:
>
>> 1.   that the offense began, continued, or was completed within the District of Oregon; and/or
>>
>> 2.   that the offense involved a form of transportation across state lines from, through, or into the District of Oregon; and/or
>>
>> 3.   that the offense involved transporting a person from, through, or into the District of Oregon.

The jury found Lukashov guilty on Count 1 and not guilty on Count 2; it did not reach a verdict on Count 3. The jury returned a special verdict finding that the government did not prove by a preponderance of the evidence that the offense charged in Count 1 (1) "began, continued, or was completed within the District of Oregon," but that the government nevertheless proved venue by a preponderance of the evidence because the offense (2) "involved a form of transportation

across state lines from, through, or into the District of Oregon" and (3) "involved transporting a person from, through, or into the District of Oregon."

Lukashov filed post-trial motions for judgment of acquittal based on insufficient evidence of purpose and improper venue. The district court denied both motions. On Lukashov's challenge to the sufficiency of the evidence, the district court applied the traditional standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and concluded that viewing the evidence in the light most favorable to the government, which had gained the jury's verdict, the "purpose" element of aggravated sexual abuse had been proved beyond a reasonable doubt.

With regard to venue, the district court first noted that venue in a criminal case had to be shown by a preponderance of the evidence. The district court then held that venue was proper on two alternative grounds, based respectively on the first and second paragraphs of 18 U.S.C. § 3237(a). We address only the first paragraph of § 3237(a) and whether Lukashov's sexual abuse of T.F. was a continuing offense that was begun, continued, or completed in the District of Oregon.[2] On this the district court reasoned:

> In hindsight, the Court believes its venue instruc-

---

[2]The district court held that venue was proper under the second paragraph of § 3237(a) because the jury had found that the offense involved interstate transportation from, through, or into the District of Oregon, satisfying subparagraph (2) of the jury instruction on venue. In ruling on Lukashov's post-trial motions for judgment of acquittal, the district court concluded that its instruction in subparagraph (3), based on an alternative "interstate commerce" theory, that venue was proper if "the offense involved transporting a person from, through, or into the District of Oregon," was error. The district court held that the jury's affirmative finding on this alternative theory should be disregarded. Because we resolve Lukashov's venue challenge based on the first paragraph of § 3237(a), we do not reach these issues.

tions to the jury did not give sufficient guidance about the alternate venue theories on which the government was proceeding after these venue issue[s] arose during trial. As to Count 1, the Court likely should have instructed the jury that if it found Defendant guilty and thereby found as fact that Defendant crossed a state line with the intent to engage in the requisite sexual act with T.F. and that Defendant then knowingly engaged in that sexual act with T.F., then the offense was, as a matter of law, a "continuing offense" (under the first paragraph of § 3237(a)) because the offense was completed in the District of Oregon when Defendant returned this eight-year old victim to her home. When the jury found beyond a reasonable doubt the facts necessary to convict the Defendant on Count 1, the Court now concludes there were not any additional facts for the jury to find as to venue under *United States v. Casch*[, 448 F.3d at 1117] before the Court should have determined venue was established on this theory as a matter of law under *United States v.* [*Angotti*, 105 F.3d 539, 541 (9th Cir. 1997)] and *United States v. Childs*[, 5 F.3d 1328, 1331 (9th Cir. 1993)]. In other words, when the government proved the substantive elements of Count 1 beyond a reasonable doubt, it necessarily proved by a preponderance of the evidence the factual predicate for a legal determination that Defendant's ongoing sexual abuse of T.F. was a continuing offense because it began sometime after T.F.'s brother was left in Montana but before Defendant carried his commercial load to New York, continued specifically through Nevada during the trip back to Oregon, and ended when the Defendant completed the trip and returned this minor child who was in his physical custody and control to the District of Oregon. In addition, finding that venue in Oregon is proper under the first prong of § 3237(a) is consistent with general policy consider-

ations behind venue provisions; *i.e.*, conducting the trial in a place convenient to the parties and the witnesses, all of whom in this cases were from Oregon when the child victim was unable to pinpoint geographically all of the places along the trip where Defendant abused her.

Although the Court respects and understands the jury's finding on this venue issue, the Court now concludes the issue as to the first prong [of] § 3237(a) became a question of law when the jury found Defendant guilty of Count 1. Thus, to the extent the Court has the authority to determine venue was established under the first prong of § 3237(a) as a matter of law at this post-verdict stage, it now does.

The district court sentenced Lukashov to 30 years in custody and entered judgment. Lukashov timely appealed. He raises issues on several evidentiary rulings, on the sufficiency of the evidence to convict him of aggravated sexual abuse, and on whether venue was proper in the District of Oregon. We review the issues in this order because the admissibility of evidence bears on the larger issue of the sufficiency of the evidence, and because the sufficiency of the evidence on Lukashov's sexual abuse of T.F. relates to the venue issue of whether that offense began, continued, or was completed in Oregon.

## II

We first address the evidence issues. We review the district court's evidentiary rulings for abuse of discretion and its underlying factual determinations for clear error. *See United States v. Shyrock*, 342 F.3d 948, 981 (9th Cir. 2003).

Lukashov challenges the district court's admission of T.F.'s videotaped interview with Rachel Petke, contending that

T.F.'s statements to Petke were not made for purposes of medical diagnosis or treatment and should have been excluded as inadmissible hearsay.

Before trial, the district court held an evidentiary hearing on the admissibility of T.F.'s statements to Dr. Lorenz and Petke at CARES. At the hearing Lorenz explained that the physical exam and interview "go hand-in-hand in generating a medical diagnosis," and Petke similarly said that the purpose of the interview was "to gather information to be used in determining the diagnosis that the physician makes and to make treatment recommendations." In addition, Lorenz testified that before she examined T.F., she told T.F. that CARES was "a regular doctor's office," that she and Petke worked together as a "team"—she was the "doctor" and Petke was the "talking person," and that together they were going to make sure that T.F. was healthy. The district court found that T.F.'s statements to Petke were made for purposes of medical diagnosis and treatment and admitted the video of T.F.'s interview with Petke under Federal Rule of Evidence 803(4). *See* Fed. R. Evid. 803(4)(A) (excepting from hearsay rule statements that are "made for—and [are] reasonably pertinent to— medical diagnosis or treatment").

Lukashov argues that the purpose of T.F.'s statements to Petke was to build a case against him rather than to obtain medical diagnosis or treatment. Lukashov relies upon, among other things, the interview's removal from the medical examination setting, the observation of the interview by a police officer, and T.F.'s use of the word "evidence" during the interview.

**[1]** We are not persuaded that the district court's finding on the purpose of T.F.'s statements was clearly erroneous. *See* Fed. R. Evid. 104(a); *Shyrock*, 342 F.3d at 981. Because "[s]exual abuse involves more than physical injury," in cases such as this one statements "made for purpose[s] of physical or non-physical treatment and diagnosis" may be admitted

under Rule 803(4). *See Guam v. Ignacio*, 10 F.3d 608, 613 (9th Cir. 1993) (internal quotation marks and citation omitted). That T.F.'s interview with Petke was separate from her physical exam with Dr. Lorenz is immaterial; what matters is that, to T.F., Petke, and Lorenz, the interview took place for the purpose of, and was reasonably pertinent to, medical diagnosis and treatment. *See* Fed. R. Evid. 803(4); *Ignacio*, 10 F.3d at 613 & n.3. The district court reasonably concluded (1) that T.F. understood the "whole evaluation" to be part of "a medical process, something that she was brought to participate in for purposes of determining her safety and to ensure that she would be protected and would be treated if she needed help," and (2) that Petke and Lorenz viewed the two parts of the process as "inextricably intertwined and part of the same diagnostic undertaking." The district court also reasonably credited Petke's and Lorenz's testimony that the presence of law enforcement did not change the medical nature of their evaluation of T.F. Finally, T.F.'s references to "evidence" do not make the videotaped interview inadmissible, because they were brief, not prompted or followed up on by Petke, and tangential to T.F.'s description of the sexual abuse for medical examination purposes.

**[2]** The district court did not abuse its discretion in admitting Petke's interview of T.F. under Rule 803(4).

## III

Lukashov contends that the district court erred in admitting Dr. Lorenz's testimony that her observations of T.F. and T.F.'s statements were consistent with T.F.'s allegations of sexual abuse.

**[3]** Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. Rule 702 in broad language requires that the testimony "help the trier of fact to understand the evidence or to determine a fact in issue" and that the expert be sufficiently qualified to give the opinion. Fed. R.

Evid. 702; *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010). Expert testimony should be excluded "if it concerns a subject improper for expert testimony, for example, one that invades the province of the jury." *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997) (en banc).

The district court permitted Dr. Lorenz to testify about four general characteristics that she looks for in determining whether a child has been sexually abused: (1) spontaneous detail, (2) sexual knowledge, (3) sensory detail, and (4) age-appropriate language. In ruling this testimony admissible, the district court explained that Lorenz could "provide the jury with material that is beyond their general knowledge, specifically with respect to the idea that there are age-appropriate behaviors and language, age-appropriate capacities concerning knowledge around sex, that are significant to a pediatrician in her role." The district court also let Lorenz give her opinion that T.F.'s medical exam and statements during the evaluation were consistent with her allegations of sexual abuse. The district court limited its ruling by cautioning that Lorenz could "not be asked any question that call[ed] for her to comment on either explicitly or implicitly the inherent credibility of [T.F.] as a witness."

**[4]** Lukashov argues that Dr. Lorenz's testimony improperly bolstered T.F.'s credibility. He cites *United States v. Binder*, in which we held that expert testimony that the child victim-witnesses could distinguish fantasy from reality and truth from falsehood improperly "bolster[ed] the children's story" and "usurp[ed] the jury's fact-finding function." 769 F.2d at 602. The government argues that Lorenz's testimony was not improper because it was helpful to the jury and concerned general characteristics of child sex abuse victims rather than the credibility of T.F. in particular. *See United States v. Hadley*, 918 F.2d 848, 852-53 (9th Cir. 1990) (holding that expert testimony about characteristics of "a class of

victims generally" not improper bolstering (internal quotation marks and citation omitted)); *see also United States v. Big-head*, 128 F.3d 1329, 1330-31 (9th Cir. 1997) (per curiam); *United States v. Antone*, 981 F.2d 1059, 1062 (9th Cir. 1992); *cf. Binder*, 769 F.2d at 602 (holding testimony improper because "experts testified that these particular children in this particular case could be believed"). The government also urges us to follow the Eighth Circuit's approach in *United States v. Whitted*, where the court held that an expert permissibly "express[ed] his opinion that his medical findings were consistent with [the child]'s claims of sexual abuse." 11 F.3d 782, 786 (8th Cir. 1993); *see also United States v. Charley*, 189 F.3d 1251, 1265-65 (10th Cir. 1999) (concluding that district court did not abuse its discretion in allowing doctor to " 'summarize the medical evidence and express an opinion that the evidence is consistent or inconsistent with the victim's allegations of sexual abuse' " (quoting *Whitted*, 11 F.3d at 785)).

**[5]** In our view, the government has the better of this argument. We conclude that the district court did not abuse its discretion in allowing Dr. Lorenz to testify about the characteristics that she looks for when assessing a child victim's story of sexual abuse, and to opine that her evaluation of T.F. was consistent with T.F.'s allegations of sexual abuse. Lorenz's testimony was helpful to the jury because some jurors would not have a general understanding of an eight-year-old's sexual knowledge and vocabulary and the level of sensory detail to look for in a child's allegations of sexual abuse. *See* Fed. R. Evid. 702(a). By giving her opinion that her medical findings and observations were consistent with T.F.'s allegations of sexual abuse, Lorenz permissibly applied her expertise to aid the jury in understanding the evidence. *See Whitted*, 11 F.3d at 786; *Antone*, 981 F.2d at 1062. Her testimony was limited and did not invade the jury's fact-finding function, as she did not comment on T.F.'s credibility or state a diagnosis to the jury. *See Whitted*, 11 F.3d at 786

(holding that doctor's diagnosis of child sexual abuse "went too far").

## IV

**[6]** On another evidence ruling, Lukashov challenges the district court's admission of Katie White's testimony that T.F. had a truthful character. Federal Rule of Evidence 608(a) states that a witness's credibility may be supported by opinion testimony about the witness's character for truthfulness, but that "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." We have said that Rule 608(a) "permits rehabilitation after indirect attacks on a witness's general character for truthfulness" but "prohibits rehabilitation by character evidence of truthfulness after direct attacks on a witness's veracity in the instant case." *United States v. Dring*, 930 F.2d 687, 691 (9th Cir. 1991). "It is for the trial court, exercising its discretion, to determine whether given conduct constitutes a direct or indirect attack on a witness's character for truthfulness." *Id.*

**[7]** Lukashov contends that White's opinion testimony on T.F.'s truthful character was not admissible because T.F.'s character for truthfulness had not been attacked. We disagree. Lukashov's defense stressed that T.F. was lying because her mother told her to lie, that she not only lied on the witness stand at trial, but had been lying from the beginning, to the police and to Dr. Lorenz and to Rachel Petke. Lukashov did not merely point out inconsistencies in T.F.'s trial testimony. Rather, he focused his defense, from opening statement through closing argument, on calling T.F. a liar. As it appears to us, the defense argument carried " 'strong accusations of misconduct and bad character' " of T.F., which the district court thought in fairness permitted evidence of her good character and truthfulness. *See id.* at 692 (quoting McCormick on Evidence); 1 McCormick on Evidence § 47 (6th ed. 2009) (stating that the greater the number of inconsistencies brought out in cross-examination, "the stronger is the inference that by

character the witness is a liar, not simply a witness who has told an isolated lie"). Though this evidence ruling presents a close question, we hold that the district court did not abuse its discretion when it responsively admitted White's testimony on T.F.'s truthful character.[3]

## V

Lukashov's final evidentiary contention is that the district court improperly excluded evidence of Cassedy Filer's alleged prior acts. Lukashov alleged that Cassedy made false allegations of assault against her ex-husband, Merlin Filer, and then threatened to take their children to force him to plead guilty, and that she tried to plant false memories in T.F. of Merlin trying to drown her in the bathtub and burn her with a cigarette. Lukashov sought to introduce evidence of these acts to support his theory that Cassedy had coached T.F. into making false allegations of sexual abuse against him.

[8] The district court excluded this evidence under Federal Rule of Evidence 404(b). Lukashov argues that he offered the evidence for a permissible purpose, to show a "pattern" in Cassedy's conduct, of fabricating allegations against her partner and involving her children in the allegations. But by introducing Cassedy's past pattern of conduct, Lukashov would have been asking the jury to engage in propensity reasoning along these lines: Cassedy had engaged in prior bad acts by using her children against Merlin in past disputes, so it was likely that she was using T.F. against Lukashov in this case. In our view, Rule 404(b) prohibits this sort of propensity evidence, and Lukashov's reasoning does not bring the prior bad

---

[3]Moreover, even if there was error in admitting White's testimony about T.F.'s truthful character, we would consider it harmless in the context of this case, in which there was direct testimony of T.F. at trial and by video, direct testimony of Lukashov, physical evidence of bruises on T.F. and spermatozoa matching Lukashov's DNA profile on her underwear, and expert testimony that T.F.'s medical exam and statements were consistent with her allegations of sexual abuse.

acts evidence within any of the uses permitted by Rule 404(b) for prior bad acts evidence, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In any event, even if the matter is fairly arguable, the district court's excluding this evidence of Cassedy's past conduct related to Merlin Filer was not an abuse of discretion.

## VI

We next turn to Lukashov's challenge to the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence to support a verdict in a criminal case, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This standard is highly deferential because our criminal justice system gives primacy to the role of the jury in determining guilt beyond a reasonable doubt after being correctly instructed on the governing law.

**[9]** Lukashov contends that the evidence at trial was insufficient because it did not establish that he had the requisite purpose for conviction under 18 U.S.C. § 2241(c). His position is that because his purpose in traveling to New York and back to Oregon was to pick up and deliver goods in his capacity as a long-haul truck driver, and because it was Cassedy Filer's rather than his idea for T.F. to go on the trip, no rational juror could have found that his purpose in crossing a state line was to engage in a sexual act with T.F. This contention is without merit, and ignores the human ability and propensity to act in light of multiple motives and purposes.

The district court instructed the jury that to convict Lukashov on Count 1, the government had to prove beyond a reasonable doubt that he "traveled across a state line with the intent to engage in a sexual act with T.F.," and explained:

[T]he government need not prove that the Defendant traveled across a state line for the sole and exclusive purpose of engaging in a sexual act. A person may have different purposes or motives for travel and each may prompt in varying degrees the act of making the journey. For purposes of [this element], the government must prove beyond a reasonable doubt that a dominant, significant, or motivating purpose of Defendant's travel across a state line was to engage in a sexual act with T.F. In other words, the government must prove the sexual act was not merely incidental to the travel.

**[10]** Viewed in the light most favorable to the government, the evidence showed that Lukashov engaged in abhorrent sexual acts with T.F. in three different states, Montana, North Dakota, and Nevada. A rational jury could have found beyond a reasonable doubt that once Lukashov formed the intent to sexually abuse T.F., whether that occurred before he started the trip or only after he dropped off J.F. in Montana and was alone in his truck with T.F., he had that illicit intent for the rest of the trip, until he returned her to her mother in Portland. Given the repeated instances of abuse after the first time in Montana, a jury could rationally infer that Lukashov crossed the Montana-North Dakota and subsequent state lines with "a dominant, significant, or motivating purpose" of committing additional sexual acts. That Lukashov also had a commercial purpose for crossing state lines does not negate the inference that he had a significant or motivating purpose to continue abusing T.F. because, as the district court correctly instructed the jury, the government did not have to prove that sexually abusing T.F. was the sole purpose of Lukashov's interstate travel. *See United States v. Cryar*, 232 F.3d 1318, 1324 (10th Cir. 2000) (rejecting defendant's insufficient evidence argument that "the dominant purpose of his crossing the state line from Texas to Oklahoma was to earn a living, and not to commit a sexual act"). It also does not matter that Cassedy rather than Lukashov first suggested that T.F. go on the trip, so long

as Lukashov committed each element of § 2241(c) thereafter. On the element of purpose, the Supreme Court's standard in *Jackson v. Virginia* was amply satisfied here. *See* 443 U.S. at 319.

## VII

We finally address Lukashov's challenge to venue. We review the district court's determination on venue *de novo*. *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012).

**[11]** Proper venue is not a mere technicality. Instead, a defendant in a criminal case has a constitutional right to be tried in a district where the crime was committed. U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."); *id.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ."). This constitutional requirement is also implemented explicitly in the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.").

We have previously explained:

> Our venue law grows out of important concerns that a criminal jury trial be held near the place where the crime was committed and where prosecution can conveniently proceed. "In criminal cases venue involves important considerations of policy, with deep historical roots, that are now expressed in a complicated interplay of constitutional provisions, statutes and rules." The Supreme Court has, at various times, expounded on the importance of prosecuting cases near the criminal defendant's home. On

other occasions, the Court has stressed the impor-
tance of a trial at the locus of the crime.

. . . .

Determining where an offense was committed, how-
ever, has often been a sticky question. Many
offenses, like complex conspiracies or transporting
contraband, may continue through multiple venues.
Congress has eased the burden of answering this
question by providing [in 18 U.S.C. § 3237(a)] that
continuing offenses may be prosecuted where they
are begun, continued, or completed[.]

*Angotti*, 105 F.3d at 541-42 (citations omitted).

The general rules controlling this sphere of law are well
settled: Venue is a question of fact that the government must
prove by a preponderance of the evidence. *Casch*, 448 F.3d
at 1117; *United States v. Pace*, 314 F.3d 344, 349 (9th Cir.
2002). In a jury trial, it is for the jury, not the court, "to deter-
mine that venue exists," and "it is error for the court to
decline to give [an] instruction [on venue]," if properly
requested. *Casch*, 448 F.3d at 1117. The sufficiency of the
evidence to justify a finding on venue, by contrast, is a ques-
tion of law for the court. *See* 2 Charles Alan Wright et al.,
Federal Practice & Procedure § 307 (4th ed. 2011); *see also*
*Angotti*, 105 F.3d at 541.

**[12]** On the other hand, the unusual circumstances of this
case, where the district court first gave an instruction on
venue and then, after the jury's determination of guilt beyond
a reasonable doubt in substance, decided the venue question
of when the crime was completed as a matter of law, require
us to take a fresh look at the governing principles. We have
found no prior precedent holding that the evidence in a case
permitted the trial court, as the district court did here, to take
the venue issue from the jury and determine it as a matter of

law. However, we formulate the following rule to be applied: Where a rational jury could not fail to conclude that a preponderance of the evidence establishes venue, then a court is justified in determining venue as a matter of law. Precedent supports the idea that when a court has failed to give a venue instruction to the jury, that error will be viewed as harmless if the evidence viewed rationally by a jury could only support a conclusion that venue existed. *E.g.*, *United States v. Miller*, 111 F.3d 747, 751-53 (10th Cir. 1997)*; see also Casch*, 448 F.3d at 1117-18; *United States v. Massa*, 686 F.2d 526, 531 (7th Cir. 1982). It follows logically that, having given a venue instruction, as the district court did here, if the evidence could only be viewed by a rational jury as sustaining venue by a preponderance of the evidence, which the district court concluded was the case once the jury found the elements of 18 U.S.C. § 2241(c) beyond a reasonable doubt, then a court can take the venue issue from the jury and decide it as a matter of law.

To decide whether venue is proper in a district, we "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). "To determine the 'nature of the crime,' we look to the 'essential conduct elements' of the offense." *Pace*, 314 F.3d at 349 (quoting *Rodriguez-Moreno*, 526 U.S. at 280). For continuing offenses, 18 U.S.C. § 3237(a) states:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the

importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

**[13]** Under *Rodriguez-Moreno* and § 3237(a), venue for a continuing offense is proper if an "essential conduct element" of the offense begins in, continues into, or is completed in the charging district. 18 U.S.C. § 3237(a); *Rodriguez-Moreno*, 526 U.S. at 280; *United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011). Because Lukashov was convicted of aggravated sexual abuse in violation of 18 U.S.C. § 2241(c), we identify the "essential conduct elements" of aggravated sexual abuse. *See Rodriguez-Moreno*, 526 U.S. at 279-80. Section 2241(c) states:

Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, . . . knowingly engages in a sexual act with another person who has not attained the age of 12 years, . . . or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life.

**[14]** The essential conduct elements are (1) crossing a state line, (2) with intent to engage in a sexual act with a child, and (3) engaging in or attempting to engage in a sexual act with a child. *See Cryar*, 232 F.3d at 1322. Given the continuing nature of these elements, the district court correctly held, and the parties do not dispute, that aggravated sexual abuse is a continuing offense for purposes of 18 U.S.C. § 3237(a). *See id.*

We next "discern the location of the commission of the criminal acts." *Rodriguez-Moreno*, 526 U.S. at 279. On this issue, the parties disagree. As we explained above, the district

court held, notwithstanding the jury's finding that the offense in Count 1 did not begin, continue, or end in the District of Oregon, that venue was proper under the first paragraph of § 3237(a). The district court reasoned that once the jury found that the government had proved the substantive elements of Count 1 beyond a reasonable doubt, the government had necessarily proved by a preponderance of the evidence that Lukashov's sexual abuse of T.F. was a continuing offense that started after her brother J.F. was left in Montana, continued as Lukashov drove to New York and back through Nevada, and ended when Lukashov returned T.F. to her home in Portland, Oregon. The district court thus concluded that when the jury found Lukashov guilty on Count 1, venue became a question of law and the government had proved venue "as a matter of law."

Lukashov contends that we must accept the jury's finding that the offense of aggravated sexual abuse did not begin, continue, or end in the District of Oregon. He argues that venue was not proper under the first paragraph of § 3237(a) because no "essential conduct element" of aggravated sexual abuse began, continued, or was completed in the District of Oregon. *See Rodriguez-Moreno*, 526 U.S. at 280.

We have previously said that a continuing offense "does not terminate merely because all of the elements are met." *United States v. Lopez*, 484 F.3d 1186, 1192 (9th Cir. 2007) (en banc). It is committed "over the whole area through which force propelled by an offender operates." *United States v. Johnson*, 323 U.S. 273, 275 (1944).

**[15]** Whenever precisely Lukashov formed his intent to abuse T.F., crossed a state line with illicit intent to abuse her, and abused her, there is no question here about his having committed the offense during his abuse in Montana or North Dakota. But what is important to our analysis is that the continuing offense did not terminate there. *See Lopez*, 484 F.3d at 1192. Lukashov's serial sexual abuse of T.F. continued

across the country to New York and back through Nevada to Oregon. There can be no doubt that T.F., an eight-year-old girl far from home in the custody of a man she called her "dad," was in fear of continued abuse and under constant threat that the abuse would resume until reaching her home. Even if Lukashov did not physically abuse T.F. after crossing into Oregon, we conclude that at a minimum the significant element of the crime of illicit intent while crossing a state line continued in Oregon en route to her home. No evidence was presented on Lukashov's intent to support a finding to the contrary. The evil intent and consequences of the crime necessarily continued into Oregon. We hold that this continuing offense of sexual abuse of a minor continued until T.F. was safely home. *Cf. Rodriguez-Moreno*, 526 U.S. at 281 ("A kidnaping, once begun, does not end until the victim is free."); *Lopez*, 484 F.3d at 1188 (holding that "a 'brings to' offense under [8 U.S.C.] § 1324(a)(2) terminates when the initial transporter drops the aliens off at a location in the United States").

The district court correctly perceived that once the jury found beyond a reasonable doubt that Lukashov had sexually abused T.F. on the trip to New York and back to Portland, the government had "necessarily" proved venue by a preponderance of the evidence because the offense continued into and was completed in Oregon as a matter of law. No rational jury could have failed to so conclude.

**[16]** We hold that venue was proper under the first paragraph of § 3237(a) and need not address the district court's alternative holding based on the second paragraph of § 3237(a).

**AFFIRMED.**