**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 30, 2026

# In the Court of Appeals of Georgia

A26A0008. DUERFELDT v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Flint Duerfeldt on four counts of child molestation, one count of aggravated sexual battery, and one count of aggravated child molestation. Duerfeldt now appeals his convictions and the denial of his motion for new trial, arguing (1) the trial court plainly erred under OCGA § 24-7-702 by admitting expert testimony that the alleged victim's disclosure was consistent with other children who report sexual abuse, and (2) by denying his claim that trial counsel rendered ineffective assistance by failing to object to that same testimony. For the following reasons, we affirm Duerfeldt's convictions and the denial of his motion for new trial.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that C. R. was born in 2006, and a couple of years later, her mother and Duerfeldt started dating and began a long-term relationship. During that relationship, Duerfeldt and C. R.'s mother had a son together ("S. P.") in 2011, and Duerfeldt helped raise both children. By 2018, the four of them moved to a residence in Franklin, Georgia. And while living there, C. R.'s mother was employed as a home nurse and often worked long hours and night-shifts, during which Duerfeldt stayed home to care for C. R. and her half-brother.

On one of those occasions, in September 2019 when C. R. was 13 years old, she was lying on her stomach watching a movie between S. P. and Duerfeldt when Duerfeldt began scratching her back. But a moment or so later, Duerfeldt moved his hand under C. R.'s pants, started rubbing her vagina, and placed two of his fingers inside her. Although C. R. felt distressed, she said nothing to Duerfeldt, fearing he might hurt her. Even so, C. R. tried to indirectly disclose the incident shortly after it happened, telling her mother she had a "realistic dream" that Duerfeldt

---

[1] See, e.g., *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018) (noting when a conviction is appealed, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence).

inappropriately touched her. But when her mother responded that she should not make up stories just to get out of doing chores, C. R. did not press the matter.

Two weeks later, C. R. was lying in her bed when Duerfeldt entered the room, got under the bed covers, and began scratching her back. After a few minutes, he pulled C. R.'s pajama pants below her knees and placed his hands and tongue on her vagina. Again, C. R. said nothing and pretended to be asleep. But C. R. heard her mother coming toward the bedroom, at which point Duerfeldt quickly stopped and pulled C. R.'s pajama pants back up. When C. R.'s mother entered the room and asked Duerfeldt what he was doing, he responded that he was just scratching C. R.'s back.

Three weeks later, C. R. was lying on the sofa in the living room while S. P. played a video game, when Duerfeldt sat down next to C. R.'s feet and asked her to massage his sprained hand. Duerfeldt then grabbed C. R.'s feet and began using them to rub against his penis. This went on for a few minutes until C. R. abruptly got up and went to the bathroom for a moment before walking outside onto the porch. Duerfeldt followed her there and asked if he was making her uncomfortable. Not wanting to anger him, C. R. said no.

3

The final incident occurred about three weeks later when C. R., her mother, S. P., and Duerfeldt were all lying in her mother and Duerfeldt's bed watching television. Duerfeldt was lying next to C. R., who was on the far left side of the bed with S. P. between him and C. R.'s mother. He then placed his hand under C. R.'s shirt and bra. He then began touching C. R.'s breasts. After about two minutes, C. R. got up and went to her own bedroom without mentioning what happened.

Duerfeldt and C. R.'s mother's relationship ended in 2021, but because they shared a son, they remained on fairly friendly terms; and so C. R. had to visit Duerfeldt at times. And soon after that, C. R. began disclosing that Duerfeldt sexually abused her to several of her high school friends, including her then boyfriend. Around that same time, Brian Gore—the older brother of one of C. R.'s friends to whom she disclosed the sexual abuse—was dating C. R.'s mother. And upon hearing about the abuse from both C. R. and his younger sister, Gore became upset and informed C. R.'s mother. Based on these disclosures, C. R.'s mother took her to the Heard County Sheriff's Office to report Duerfeldt's sexual abuse. Two days later, law enforcement took C. R. and her mother to a local child-advocacy center for a forensic interview, during which C. R. recounted the details of the sexual abuse.

The State then charged Duerfeldt, via indictment, with four counts of child molestation, one count of aggravated sexual battery, and one count of aggravated child molestation. The case proceeded to trial, during which the State presented the evidence above. The State also called a psychiatrist who was treating C. R. and who testified that the young girl was suffering from post-traumatic stress disorder. The forensic interviewer from the child-advocacy center, Jeliegha Brown, also testified about her interview of C. R., and the State played a video recording of the interview.

After the trial, the jury found Duerfeldt guilty on all counts in the indictment. Duerfeldt then filed a motion for new trial, and—after obtaining appellate counsel—amended the motion to include a claim of ineffective assistance of trial counsel. The trial court held a hearing on the amended motion, during which Duerfeldt's trial counsel testified regarding his representation. Shortly thereafter, the trial court denied Duerfeldt's motion. This appeal follows.

1. Duerfeldt first contends the trial court plainly erred under OCGA § 24-7-702 in admitting expert testimony from the forensic interviewer that C. R.'s disclosure was consistent with other children who report sexual abuse. We disagree.

During trial, the State called the child-advocacy center's forensic interviewer, Brown, to testify about her interview of C. R. Explaining her qualifications, Brown testified that she had conducted over 200 interviews of children alleging sexual abuse, previously testified as an expert at trial, and was—based on her education, training, and experience—familiar with the ways children process and disclose sexual abuse. The State then tendered Brown as an expert, which the trial court granted over Duerfeldt's objection. Later on, Brown testified about her interview of C. R. and disclosure of sexual abuse by children generally. And toward the end of the State's direct examination, the prosecutor asked Brown if part of her training included recognizing when a child was being coached—*i.e.*, told what to say—and Brown responded affirmatively. The prosecutor then asked if Brown saw any indication that C. R. had been coached, and Brown responded that she had not. Just after, the prosecutor questioned Brown as follows:

> Q: In terms of the of [C. R.'s] disclosure to you of what happened to her, was it consistent or inconsistent with other children who reported being sexually abused?

A: It was consistent. She gave – detail about everything that – that she remembered that happened, the willingness to tell detail that she remembers.

Duerfeldt's counsel did not object and began his cross-examination.

On appeal, Duerfeldt argues that although Brown's testimony would have been admissible under former Rule 707 (OCGA § 24-7-707), after that rule was repealed and replaced by the amended OCGA § 24-7-702, her testimony amounted to improper bolstering of C. R.'s credibility. But as Duerfeldt acknowledges, because he did not object to Brown's testimony, the ruling related to this evidence is only "subject to review on appeal for plain error affecting substantial rights."[2] In this respect, the Supreme Court of Georgia has adopted the federal plain-error standard of review, as explained by the Supreme Court of the United States in *Puckett v. United States*.[3] Under this four-pronged test,

---

[2] *Gates v. State*, 298 Ga. 324, 326(3) (781 SE2d 772) (2016) (punctuation omitted). See OCGA § 24-1-103(d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court.").

[3] 556 U.S. 129 (129 SCt 1423, 173 LE2d 266) (2009). See *Gates*, 298 Ga. at 326(3) (noting that the Supreme Court of Georgia has adopted the four-pronged plain-error standard as set forth in *Puckett*).

7

there [first] must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[4]

And importantly, satisfying all four prongs of this standard is "difficult, as it should be."[5]

That said, before addressing Duerfeldt's specific claim of error, some historical context regarding the statute is useful. When the current evidence code became effective in 2013,[6] OCGA § 24-9-67.1 was replaced with the nearly identical OCGA

---

[4] *Gates*, 298 Ga. at 327(3) (punctuation omitted), *quoting State v. Kelly*, 290 Ga. 29, 33(2)(a) (718 SE2d 232) (2011). See *Puckett*, 556 U.S. at 135(II) (explaining four-pronged plain-error review).

[5] *Rijal v. State*, 367 Ga. App. 703, 705(1) (888 SE2d 272) (2023) (punctuation omitted). Accord *Williams v. State*, 315 Ga. 490, 495(2) (883 SE2d 733) (2023).

[6] See Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's then-new Evidence Code applies "to any motion made or hearing or trial commenced on or

§ 24-7-707,[7] which provided: "In criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." But effective July 1, 2022, the General Assembly repealed OCGA § 24-7-707 and amended OCGA § 24-7-702 such that the latter statute now governs the admissibility of expert testimony in criminal as well as civil cases.[8] That amended version of OCGA § 24-7-702(b) provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise,

---

after" January 1, 2013).

[7] See *Robinson v. State*, 309 Ga. 729, 735(3) n.2 (848 SE2d 441) (2020) (noting "the evidentiary requirements relating to the admissibility of expert opinion testimony in a criminal case under the new Evidence Code (OCGA § 24-7-707) are nearly identical to those that applied under the former Evidence Code (OCGA § 24-9-67")). See also Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 441 (5th ed. 2016) (explaining "this statute in essence recreates a former Georgia code provision [OCGA § 24-9-67] that does not appear in federal law").

[8] See 2022 Ga. L., p. 201, § 1 (amending OCGA § 24-7-702 to apply "in all proceedings" rather than only "in all civil proceedings" and repealing OCGA § 24-7-707). See also OCGA § 24-7-702 (a) ("Except as provided in Code Section 22-1-14 and in subsection (g) of this Code section, the provisions of this Code section shall apply in *all* proceedings. The opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses." (emphasis added )).

if: (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based upon sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.

With this amendment, the General Assembly extended "to criminal cases the federal standard of admissibility of expert testimony articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[9] and its progeny."[10] And under this standard,

a trial court must evaluate the reliability of the expert's proffered testimony; proper considerations include whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.[11]

---

[9] 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

[10] *Smith v. State*, 315 Ga. 287, 300(2)(b) n.6 (882 SE2d 300) (2022) (punctuation omitted). Accord *Rijal*, 367 Ga. App. at 713(3)(b)(ii) n.58.

[11] *Smith*, 315 Ga. at 300(2)(b) n.6 (punctuation omitted). Accord *Rijal*, 367 Ga. App. at 713(3)(b)(ii) n.58.

Importantly, a trial court has broad discretion when "accepting or rejecting the qualifications of an expert witness, and we review a trial court's ruling on both the qualification of an expert and the admissibility of that expert's testimony for an abuse of discretion."[12]

Turning to Duerfeldt's specific argument, under former Rule 707, Brown's testimony that C. R.'s disclosure evinced no signs of coaching and was consistent with other children who report sexual abuse was admissible.[13] But the trial here occurred in November 2023. So, the admissibility of Brown's testimony was governed by the

---

[12] *Garland v. State*, 361 Ga. App. 724, 732(2) (865 SE2d 724) (2021) (punctuation omitted); see also generally *Flannigan v. State*, 305 Ga. 57, 60 (2) (a) (823 SE2d 743) (2019); *Hambrick v. State*, 353 Ga. App. 666, 675 (3) (839 SE2d 664) (2020).

[13] See *Hammond v. State*, 368 Ga. App. 277, 283(2)(b) (890 SE2d 40) (2023) (holding forensic interviewer's testimony that victim's disclosure was consistent with an outcry of child sexual abuse did not amount to improper bolstering); *DiPietro v. State*, 356 Ga. App. 539, 544–45(2)(a) (848 SE2d 153) (2020) (holding expert witness's testimony that she found no "red flags" to indicate deception or fabrication in the victim's forensic interview did not directly comment on the victim's credibility nor on the ultimate issue of the defendant's guilt). Compare *Gilmer v. State*, 339 Ga. App. 593, 595 (2)(a) (794 SE2d 653) (2016) (explaining expert witness's testimony that the way the victim described his abuse in his forensic interview "add[ed] credibility to what [the victim] was saying" and was improper bolstering).

*current* version of OCGA § 24-7-702(b) (Rule 702),[14] which Duerfeldt posits should have resulted in its exclusion. More precisely, citing *United States v. Whitted*[15] and *United States v. Charley*,[16] Duerfeldt argues that federal appellate courts applying Rule 702(b)[17] have deemed testimony similar to Brown's inadmissible, characterizing it as improper bolstering of the alleged victim's credibility. But we do not agree that the federal caselaw cited by Duerfeldt drastically departs from our own pre-2022 caselaw.

In *Whitted*, the United State Court of Appeals for the Eighth Circuit explained that a medical expert's testimony providing his diagnosis that the victim suffered repeated sexual abuse should have been excluded under Rule 702, as it "was only a thinly veiled way of stating that [the alleged victim] was telling the truth[.]"[18] But in the same opinion, the Court also noted the medical expert's testimony that his

[14] See *supra* note 8 & accompanying text.

[15] 11 F3d 782 (8th Cir. 1993).

[16] 189 F3d 1251 (10th Cir. 1999).

[17] Because our Evidence Code is modeled on the Federal Rules of Evidence, when the appellate courts of this State consider the meaning of those provisions, "we look to decisions of the federal appellate courts construing and applying the Federal Rules, especially the decisions of the United States Supreme Court and the Eleventh Circuit." *Olds v. State*, 299 Ga. 65, 69(2) (786 SE2d 633) (2016).

[18] *Whitted*, 11 F3d at 786-87.

medical findings as to the alleged victim were *consistent* with her claims of sexual abuse was permissible.[19]

Similarly, in *Charley*, the United States Court of Appeals for the Tenth Circuit ruled that a pediatrician called as an expert under Rule 702 was erroneously permitted to offer an opinion that the alleged victims were sexually abused based solely on their disclosure to her (the pediatrician) and others.[20] As the Tenth Circuit explained, "expert testimony, based on the statements of the alleged victim, that sexual abuse in fact occurred is inadmissible under [Rule 702] (or similar military or state evidentiary rules) because, in such cases, the expert offering the opinion is merely vouching for the credibility of the alleged victim."[21] But the *Charley* Court also noted the trial court did not err in allowing two mental-health counselors to offer their expert opinion that one of the alleged victim's had symptoms consistent with symptoms of sexual-abuse victims, finding that such opinions "did not constitute impermissible vouching[.]"[22]

---

[19] Id. at 786.

[20] 189 F3d at 1266(II)(B)(2).

[21] Id. at 1267(II)(B)(2).

[22] Id. at 1269(II)(B)(3).

Additionally, although not cited by Duerfeldt (but perhaps more analogous to his case), in *United States v. Lukashov*,[23] the United States Court of Appeals for the Ninth Circuit found no error under Rule 702 when the trial court allowed a pediatrician—who worked at a medical clinic specializing in child sexual abuse—to give her opinion that the alleged victim's medical exam *and statements* during the evaluation were consistent with her allegations of sexual abuse.[24] In doing so, the Ninth Circuit explained that "the district court did not abuse its discretion in allowing [the pediatrician] to testify about the characteristics that she looks for when assessing a child victim's *story* of sexual abuse, and to opine that her evaluation of [the alleged victim] was *consistent* with [the alleged victim's] allegations of sexual abuse."[25] The *Lukashov* Court added that the pediatrician's "testimony was limited and did not invade the jury's fact-finding function, as she did not comment on [the alleged victim's] credibility or state a diagnosis to the jury."[26]

---

[23] 694 F3d 1107 (9th Cir. 2012).

[24] Id. at 1116–17(III).

[25] Id. at 1116(III) (emphasis added).

[26] Id. at 1117(III); see also *United States v. Hadley*, 918 F.2d 848, 852-53 (9th Cir. 1990) (noting that expert testimony about "general behavior characteristics that may be exhibited in children who have been sexually abused," and is "limited to a

14

In light of this authority, we are not persuaded that the 2022 amendment to Georgia's Rule 702 applying it to criminal matters marks a sea change in our jurisprudence; and so, we disagree with Duerfeldt that the trial court disregarded the federal courts' application of Rule 702 by admitting Brown's testimony. Indeed, similar to the testimony federal courts have determined is admissible under Rule 702, Brown opined only that—based on her experience and training—C. R. did not appear coached—*i.e.*, C. R. used her own words, and her disclosure was consistent with other children who reported sexual abuse. Brown did *not* testify that C. R.'s disclosure was credible, opine that C. R. was in fact sexually abused, or otherwise invade the province of the jury. To the contrary, Brown testified that her role as a forensic interviewer was to gather information, not to investigate, stating, "It's not my job to believe [alleged victims]. It's my job just to gather the information from them." And on cross-examination, Brown reiterated, "It's not my job to figure out if [the disclosure is] true

discussion of a class of victims generally . . . merely "assist[s] the trier of fact in understanding the evidence" and does not "improperly bolster the children's testimony.") (citation modified).

or not." Given these circumstances, the trial court did not abuse its discretion—much less plainly err—in admitting Brown's testimony that Duerfeldt now challenges.[27]

2. Duerfeldt also contends the trial court erred in denying his claim that trial counsel rendered ineffective assistance by failing to object to Brown's testimony. Again, we disagree.

---

[27] See id. at 1116–17(III) (holding district court did not abuse its discretion in allowing pediatrician who worked at medical clinic specializing in child sexual abuse to give expert testimony opining that alleged victim's exam and statements were consistent with the allegations of sexual abuse); *Charley*, 189 F3d at 1269(II)(B)(3) (explaining mental-health counselors did not impermissibly vouch for testimony of alleged victims, in prosecution for sexual abuse of children, by testifying that the that older child's symptoms were consistent with the symptoms of sexual abuse victims); *Whitted*, 11 F3d at 785–86 (noting that "[i]n the context of child sexual abuse cases, a qualified expert can inform the jury of characteristics in sexually abused children and describe the characteristics the alleged victim exhibits[,]" and it was permissible for expert to summarize the medical evidence and express his opinion that his medical findings were "consistent or inconsistent with victim's allegations of sexual abuse"); *Hammond*, 368 Ga. App. at 283(2)(b) (holding forensic interviewer's testimony that victim's disclosure was consistent with an outcry of child sexual abuse did not amount to improper bolstering); *DiPietro*, 356 Ga. App. at 544–45(2)(a) (holding expert witness's testimony that she found no "red flags" to indicate deception or fabrication in the victim's forensic interview did not directly comment on the victim's credibility nor on the ultimate issue of the defendant's guilt); *Ward v. State*, 353 Ga. App. 1, 7(2)(b) (836 SE2d 148) (2019) ("This Court has repeatedly held that a witness does not improperly bolster a victim's credibility by testifying that the witness saw no evidence of coaching." (punctuation omitted)).

To evaluate Duerfeldt's claims of ineffective assistance of counsel, we apply the familiar two-pronged test established in *Strickland v. Washington*,[28] which requires him to show that trial counsel's performance was "deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[29] Importantly, should a defendant "fail to meet his burden on one prong of this two-prong test, we need not review the other prong."[30] Also, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[31] The reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and

---

[28] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[29] *Chapman v. State*, 273 Ga. 348, 349–50(2) (541 SE2d 634) (2001). See *Strickland*, 466 U.S. at 687(III); *Ashmid v. State*, 316 Ga. App. 550, 556(3) (730 SE2d 37) (2012).

[30] *McAllister v. State*, 351 Ga. App. 76, 93(6) (830 SE2d 443) (2019). Accord *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

[31] *Chapman*, 273 Ga. at 350(2). See *Cammer v. Walker*, 290 Ga. 251, 255(1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

under the particular circumstances of the case[.]"[32] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[33] Moreover, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[34]

Given our holding in Division 1, this enumeration provides no basis for reversal because Duerfeldt has not shown that an objection to Brown's testimony that he now challenges would have succeeded, and his trial counsel's "failure to pursue this futile course does not constitute ineffective assistance of counsel."[35]

---

[32] *Lockhart v. State*, 298 Ga. 384, 385(2) (782 SE2d 245) (2016).

[33] Id.

[34] *Sowell v. State*, 327 Ga. App. 532, 539(4) (759 SE2d 602) (2014). See *Grant v. State*, 295 Ga. 126, 130(5) (757 SE2d 831) (2014) (holding that "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo").

[35] *Ramirez v. State*, 376 Ga. App. 775, 782(3) (921 SE2d 36) (2025). See *Hill v. State*, 310 Ga. 180, 192–93(8)(b) (850 SE2d 110) (2020) (explaining failure of counsel to assist in way that "would have been fruitless did not constitute deficient performance" (punctuation omitted)); *Ramirez*, 376 Ga. App. at 782(3) (holding that because officer's expert testimony regarding function of event data recorder was

For these reasons, we affirm Duerfeldt's convictions and the denial of his motion for new trial.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

admissible under Rule 702, defendant's claim that his trial counsel rendered ineffective assistance by failing to object to it lacked merit).